[No. 12389.   Department One.   April 20, 1915.]

## THE STATE OF WASHINGTON, *Respondent*, v. FRANK ROSS *et al., Appellants.*[1]

CRIMINAL LAW—EVIDENCE—ADMISSIONS.  In a prosecution for assault, declarations made by defendant on his arrest, tending to show intent or motive as to the offense charged, are admissible; and the fact that, interspersed through the conversation testified as had with the defendant, were probable references to feeling between him and other parties in the neighborhood would not constitute prejudicial error.

WITNESSES—CROSS-EXAMINATION.  In a prosecution for assault, the action of the court, in excluding cross-examination of the state's witnesses as to charges made that the defendant's mother was a claim jumper was not error, inasmuch as it was the duty of the court to restrict cross-examination of witnesses to the issues involved in the case.

ASSAULT AND BATTERY — CRIMINAL PROSECUTION — DEGREES — INSTRUCTIONS.  In a prosecution for assault in the second degree, under which the defendant might be convicted of assault in the third degree, defined as any assault not included in first and second degree assaults, an instruction defining all the degrees of assault, but expressly charging the jury that "defendant is not charged with assault in the first degree, and a definition of that offense is only given you that you may better understand the other degrees," was not prejudicial error.

SAME—SECOND DEGREE—EVIDENCE—SUFFICIENCY.  A conviction of assault in the second degree is warranted, under Rem. & Bal. Code, § 2414, defining the offense as willfully inflicting grievous bodily harm upon another with or without a weapon, or as assaulting with a weapon or thing likely to produce bodily harm, where the evidence showed that defendant disarmed the prosecuting witness of his revolver, struck him across the jaw with something that felt like a slug of iron, that he had a cut under each eye which were swollen almost shut, that his jaw was severely swollen, and that there was a fracture of the nasal bone.

CRIMINAL LAW—APPEAL AND ERROR — REVIEW — FAILURE TO GIVE INSTRUCTIONS.  Under art. 4, § 16, of the state constitution providing that "judges shall declare the law," and under Rem. & Bal. Code, § 2308, which provides that "every person charged with the commission of a crime shall be presumed innocent until the contrary is

[1]Reported in 147 Pac. 1149.

proved by competent evidence beyond a reasonable doubt," the inadvertence of the court in failing to instruct on the presumption of innocence is not prejudicial error, where no request had been made for such instruction, and the court gave a correct instruction as to reasonable doubt and the requirements of the prosecution in establishing a case.

CRIMINAL LAW—APPEAL AND ERROR—ASSIGNMENT OF ERROR. Alleged misconduct of counsel in argument to the jury, presented not by a stenographer's report or certificate of the judge, but by affidavits of opposing counsel on a motion for a new trial, which was denied by the judge in whose presence and hearing the incident complained of occurred, raises no question for review on appeal.

Appeal from a judgment of the superior court for Pacific county, Rice, J., entered November 8, 1913, upon a trial and conviction of assault. Affirmed.

*Fred M. Bond,* for appellants.

*H. W. B. Hewen* (*Geo. D. Abel,* of counsel), for respondent.

HOLCOMB, J.—The appellants were jointly charged with assault in the second degree, and each convicted of assault in the third degree; from which conviction, they appeal.

I.  An error is assigned in that the court permitted the state to introduce testimony by a witness named Burke as to statements made to the witness by one of the defendants, Frank Ross, after the arrest of the defendants. Witness Burke assisted in the arrest of this defendant. On the return to the county seat, some conversation occurred between witness and Frank Ross concerning the prosecution and the matter for which they were being prosecuted. It is insisted by the appellants that the conversation was clearly prejudicial to their rights; in other words, that it conveyed the impression to the jury that defendants were having trouble over there with other people beside Mr. Bradley, the prosecuting witness, and no other conclusion could have been reached by the jury; and also conveyed the idea to the jury that defendants had threatened to commit a crime more

serious than that with which they were charged. We do not so consider it. The prosecution, by its questions, endeavored to elicit from the witness the conversation that occurred concerning the arrest and concerning the prosecution against the defendants, and the witness Burke apparently did not understand all of the questions. Interspersed through the conversation had with him were probably references to some controversy or feeling between them and other parties in the neighborhood, which, of course, were clearly improper and irrelevant, but were not gotten before the jury. But the purpose of the prosecution evidently was to show, by the conversation, admissions on the part of the defendants, or one of them, tending to show their guilt of the particular offense for which they were prosecuted; in other words, show what their intention or motive was. It is always proper for the prosecution to show the intent; and so far as being prejudicial is concerned, all evidence tending to show guilt of the accused is prejudicial. If it is not irrelevant, incompetent, or immaterial to the case, it is not erroneous. There was nothing admitted by the court that was improper or irrelevant, and therefore no prejudicial error was committed.

II. Error is also assigned as to the restriction of the cross-examination of witnesses Claud Venderpool, May Vanderpool, A. A. Bradley, and J. N. Howard. We perceive no error in the rulings of the court in regard thereto. As an example, witness May Vanderpool was asked if she had not claimed that Mrs. Ross (mother of defendants) jumped her claim out there, and if she (Mrs. Vanderpool) had not employed Mr. Abel in regard to that matter. There certainly was no error in excluding cross-examination as to this subject. It was the duty of the court to restrict cross-examination of witnesses to the issues involved in the case, either directly or reasonably collateral thereto, such as their bias and interest in the matter under consideration, and we think the court did not abuse its discretion in restricting the cross-examination of all the witnesses as to which error is as-

signed. It is true that it is permissive to ask questions of witnesses tending to show their interest or prejudice against one of the parties, but the questions asked of these witnesses clearly went outside all direct or collateral issues in this case. The question of whether or not the Vanderpools or the Rosses were claim jumpers had no proper place in the trial of this case; continued reference thereto would have tended to obscure the real issues involved in the trial, and all such controversies should have been, and were, properly eliminated from the trial of the case.

III. Appellants urge that it was error for the court to instruct the jury defining the offense of assault in the first degree. The defendants were prosecuted for assault in the second degree, which, of course, includes, if the facts warranted, the lesser offense of assault in the third degree. The court in its instructions gave brief definitions based on the statutes of the offenses of assault in the first degree, second degree, and third degree; and further instructed the jury as follows:

"The defendant is not charged with assault in the first degree and a definition of that offense is only given to you that you may better understand the other degrees."

This instruction was proper to be given in the case, for the reason that the statute further provides that any assault not constituting assault in the first or second degree is an assault in the third degree. In order, then, for the jury to understand what would not be an assault in the first degree as well as what would not be an assault in the second degree, it was not improper for the court to give them a definition of assault in the first degree, thus distinguishing between assaults in the first and second degrees and assault in the third degree, of which defendants were convicted.

The appellants also contend that it was error for the court to instruct the jury as to assault in the second degree. They argue that a careful examination of the statement of facts clearly shows that there was no evidence at all warranting

the court in sending the case to the jury upon the theory that they had a right to convict of assault in the second degree. This contention, we assume, is based upon the theory that it was not definitely established at the trial of the case that the defendants, or either of them, used any deadly or dangerous weapon in the attack upon the prosecuting witness Bradley. It was alleged in the information that they "did then and there unlawfully and wilfully assault, strike, beat, wound, and inflict grievous bodily harm upon, one Bradley, with metal knuckles and clenched fists." The statute, Rem. & Bal. Code, § 2414, defines assault in the second degree, among other definitions, as follows:

"(3) Shall willfully inflict grievous bodily harm upon another with or without a weapon; or

"(4) Shall willfully assault another with a weapon or other instrument or thing likely to produce bodily harm."

The evidence on behalf of the prosecution was to the effect that the prosecuting witness Bradley, on the date alleged, was in a place where he had a right to be; that he was overtaken by defendants Frank Ross, Earl Ross, and another; that he was first insulted and called vile names, then disarmed, by defendant Earl Ross, of a revolver which was hung in a scabbard from his shoulder, and which he had not touched or attempted to use; and then first assailed by defendant Frank Ross, who struck him "across the jaw with something that felt more like a slug of iron than anything else;" that he was hit several "licks" afterwards, but could not really tell how many or by whom. Other witnesses for the prosecution testified that he had a cut under each eye, one of them about three-fourths of an inch or more long, and the other an inch or longer; that both his eyes were swollen almost shut, and that his jaw was severely swollen, the swelling extending down to the cords of his neck. A doctor, who examined him on the Thursday following the Sunday on which he was assaulted, found that he had black and blue areas about both eyes and some swelling about the

left temple. There was a healed scar beneath each eye, overlying the lower edge of the orbit and extending about five-eighths of an inch on each side, and about half an inch below the margin of the lower lid, parallel with the lid edge. There was a fracture of the nasal bone on the left side and a separation of the right nasal bone from the cartilage. There is positively no question, if the jury believed this and other evidence on the subject produced by the state, but that they were amply warranted in finding that the defendant had, with such intent, inflicted grievous bodily injury upon the said Bradley, and that there was, therefore, ample evidence to justify the jury in finding defendants guilty of assault in the second degree instead of assault in the third degree, as they did find.

IV. An error is urged upon the failure of the court to instruct the jury that the law presumes the defendants innocent, and that this presumption of innocence remains with the defendants throughout the whole trial and until said presumption of innocence is overcome by the state by competent evidence beyond a reasonable doubt; and that this is true even though the defendants do not request the same, this duty being provided for by law. It is urged that § 16, art. 4 of the constitution of the state of Washington, which reads: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law;" and the statute of 1909, Rem. & Bal. Code, § 2308, as follows: "Every person charged with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt; and when an offense has been proved against him, and there exists a reasonable doubt as to which of two or more degrees he is guilty, he shall be convicted only of the lowest;" render it the imperative and mandatory duty of the court in all criminal cases to instruct the jury as to the presumption of innocence. Cases from other jurisdictions are cited to sustain this contention: *People v. Potter*, 89 Mich. 353, 50 N. W.

994; *Territory v. Nichols,* 3 Johnson's (N. M.) 76, 2 Pac. 78; *State v. Cody,* 18 Ore. 506, 23 Pac. 891, 24 Pac. 895; *People v. De Fore,* 64 Mich. 693, 31 N. W. 585, 8 Am. St. 863; *People v. Murray,* 72 Mich. 10, 40 N. W. 29; *State v. Banks,* 73 Mo. 592.

There is no doubt whatever that, had this instruction been requested, it would have been the duty of the court to give the instruction, and error for him to refuse it. This court, in *State v. Myers,* 8 Wash. 177, 35 Pac. 580, held that, in a case where the accused fails to testify in his own behalf, it is the duty of the court under the statute, without an affirmative request therefor, to charge that no inference of guilt should arise against the defendant on account thereof; reaffirming the decision of the court in *Linbeck v. State,* 1 Wash. 336, 25 Pac. 452. This case has been recently reaffirmed in the case of *State v. Hanes,* 84 Wash. 601, 147 Pac. 193. In referring to the cases of *Linbeck v. State* and *State v. Myers, supra,* Chadwick, J., said it was there held "that this statute [requiring the court to instruct the jury that no inference of guilt shall arise if the accused shall fail or refuse to testify in his own behalf] is mandatory and that it is the duty of the trial judge to so instruct the jury; that a failure to do so is reversible error. An engaging and persuasive argument is made by the prosecuting attorney in which we are asked to overrule our former holdings. If the matter were an original question we would be inclined to consider some of the reasons urged in support of his argument. The cases cited followed the letter of the statute, which says, 'It shall be the duty'." In the case at bar, the appellants requested no instruction as to the presumption of innocence of defendants, and the omission to give such instruction was not called to the attention of the trial court until the exceptions were filed and reasons urged for a new trial. The trial court instructed the jury as follows:

"The burden is on the state of proving every fact material and necessary to a conviction by competent evidence beyond a reasonable doubt. It is not sufficient that the state should prove these facts by a mere preponderance of testimony, nor on the other hand is it necessary that they should be proved conclusively in such a manner as to leave room for no doubt whatever."

We admit that the question presented is one of some nicety and importance. In *State v. Mayo*, 42 Wash. 540, 85 Pac. 251, Fullerton, J., passing upon the question, where the appellant especially requested the court to instruct the jury on the law relating to the presumption of innocence and the court refused so to do, said:

"This was error. The accused is entitled in every instance to an instruction on the presumption of his innocence. The court need not, of course, give the instruction in the language of the request unless it so desires; but when requested to instruct as to the presumption of innocence, it should comply therewith in some form, such as will correctly inform the jury as to the law pertaining thereto."

The authorities seem to be unanimous that, where such an instruction is requested, it is error to fail or refuse to give it, and with those authorities we concur. But the general rule now is, except in cases where there are specific provisions of the statute which are mandatory upon the court, as in the case under our statute, of instructing the jury as to the failure of the defendant to testify in his own behalf, that, subject to a few statutory innovations, "mere *non-direction*, partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused. Thompson, Trials (2d ed.), § 2341; *State v. Parsons*, 44 Wash. 299, 87 Pac. 349, 120 Am. St. 1003; *People v. Graney*, 91 Mich. 646, 52 N. W. 66; *People v. Smith*, 92 Mich. 10, 52 N. W. 67; *People v. Ostrander*, 110 Mich. 60, 67 N. W. 1079; 12 Cyc. 621; 22 Am. & Eng. Ency. Law (2d ed.), 1281; 11 Ency. Plead. & Prac., 354.

Ordinarily a charge in a criminal case should contain instructions upon the subject of the presumption of innocence and reasonable doubt. It can hardly be doubted, however, that in this case the omission to instruct as to the presumption of innocence was inadvertent, and had counsel suggested the subject or the omission, the trial judge would doubtless have given such instruction. In a recent Michigan case, *People v. Yund,* 163 Mich. 504, 128 N. W. 742, the court say:

"A premium should not be placed on the practice in this case. Counsel owe it to the trial judge to be attentive to the charge and suggest corrections where respondent's rights are injured by it. Especially is this true where the rule is as well understood as in these particulars. Again, while an exception need not be taken to misstatements of law in the charge, it is usually necessary where the fault consists of an omission. It is only fair to the public and to the trial judge. . . ."

So in this case the counsel owed some duty to the court, and we do not approve of counsel in a case sitting by inert and permitting the court to commit an inadvertent error which, by the slightest and simplest suggestion could be cured before the jury received the case. If we are to consider every inadvertent error of omission or even of commission committed by the court as necessarily prejudicial and ground for the reversal of the case, it will soon become so that an appeal to this court will be little else than a trial of the trial court, and the real merits of the case in controversy will escape attention. Certainly it is the duty of the trial court to see that the accused in a criminal case has a fair and impartial trial. While we would not approve of the deliberate omission of the instruction as to presumption of innocence in a criminal case, we will not, for mere nondirection, where no such instruction was requested and where the court gave a correct definition and instruction as to reasonable doubt and the requirements of the prosecution in establishing a case, hold that such nondirection is prejudicial error. *People v.*

*Yund, supra; State v. Kennedy,* 154 Mo. 268, 55 S. W. 293;
*State v. Stewart,* 52 Wash. 61, 100 Pac. 153; 2 Thompson,
Trials (2d ed.), § 2341. The instructions as a whole were
full and clear and as favorable to defendants as could be re-
quired. We do not believe that the omission complained of,
in view of the instruction given as to reasonable doubt, in
any way affected the result, or, in this instance, prejudiced
the right of the defendants to a fair and impartial trial.

V.   An error is assigned upon the allowance by the court
of argument by the special counsel for the state to the jury,
that defendants had not introduced any evidence of good
character because their witnesses had not heard any one
say anything about defendants being peaceable, law-abiding
citizens. It is alleged in affidavits, made by each of the coun-
sel for appellants after the trial of the case on a motion for
a new trial, that, at the time these remarks were made in
argument by counsel for the state, they were objected to by
defendants, and that the court refused to interfere in the
matter; and it is also urged that other improper and preju-
dicial remarks were made by counsel for the state, which were
objected to and no exclusion thereof made by the court.
These matters were included in the statement of facts by
copies of the affidavits relating thereto, which, as stated,
were filed after the trial by counsel for the appellants. We
think the matters here urged are ruled by the decision of
this court in *State v. Johnston,* 83 Wash. 1, 144 Pac. 944.
In that case, the court, per Ellis, J., say:

"It is true that a copy of an affidavit of one of the attor-
neys for the appellant appears in the statement of facts in
which he sets out what he claims to be the substance of the
objectionable statements, . . . Whatever the true pur-
port of the incident complained of, it occurred in the imme-
diate presence and hearing of the trial court. What actually
occurred was a matter peculiarly within the knowledge of
the trial judge. Either a stenographic report of the argu-
ment or a statement of the trial judge as to what was its
purport, would have given it to us from an authentic source.

It would have been easy to have preserved the language in context, either by the court stenographer, or by a request that the judge reduce it to writing in such form that he could certify it as the substance and connection of what was actually said. The case falls directly within the rule announced in *Maryland Casualty Co. v. Seattle Elec. Co.,* 75 Wash. 430, 134 Pac. 1097, and followed in *Loy v. Northern Pac. R. Co.,* 77 Wash. 25, 137 Pac. 446."

See, also, *State v. Jakubowski,* 77 Wash. 78, 137 Pac. 448; *State v. McGonigle,* 14 Wash. 594, 45 Pac. 20; *State v. Poyner,* 57 Wash. 489, 107 Pac. 181.

In the case at bar, these affidavits were not controverted by the state by counter affidavits, but the court, in the face of these affidavits, denied a motion for a new trial. We may, therefore, infer that he, knowing what actually occurred at the time of the trial, passed on the alleged facts therein contained adversely to them. Viewing the matter from whatever angle we may, we fail to find a sufficient predicate in the record to sustain the claim of prejudicial misconduct. *State v. Johnston, supra.*

VI. Lastly, it is claimed by the appellants that the trial court should have granted a new trial, and that the verdict of the jury was clearly against the weight of the evidence. With this contention we do not agree. We have carefully examined the record of the evidence in the case and, without specially alluding to any of it, we simply state that we consider the evidence amply sufficient to warrant the jury, if they believed it, in finding defendants guilty of one of the degrees of assault charged. The verdict of the jury and the punishment assessed by the court were lenient.

We find no prejudicial error in the record, and the judgment is affirmed.

MORRIS, C. J., MOUNT, and PARKER, JJ., concur.