[No. 1095. Decided January 10, 1895.]

THE STATE OF WASHINGTON, *Respondent, v.* CHAMP PAYNE, *Appellant.*

HOMICIDE—-INFORMATION—-VARIANCE—-EVIDENCE—-REQUIRING PROSECUTION TO PRODUCE WITNESS—DISCRETION OF COURT—PRESUMPTION FROM KILLING.

In a prosecution upon an information charging certain defendants with having killed the deceased by the use of a knife held by them,

35–10W

there is not a material variance when the proof shows that the knife was held and the blow struck by another person than is charged in the information, it further appearing that defendants aided and abetted such person, and that the blow was in pursuance of a conspiracy on their part to terrorize the community.

In a prosecution for murder, wherein it is sought to show that the crime was the result of a concert of action among four persons to terrorize the community, the acts and statements of the defendant on trial and those of the others in his presence, prior to the commencement of the assault, are admissible in evidence for the purpose of placing the jury in possession of the circumstances leading up to the assault.

A motion requiring the prosecution in a criminal case to call certain specified persons, who are alleged to have equal or superior knowledge of the facts with the witnesses already called by the prosecution, is a matter addressed to the discretion of the trial court, and its ruling thereon will not be disturbed unless a clear abuse of discretion is shown.

The prosecution is not required to produce for the consideration of the jury all the evidence within its knowledge which would have a tendency to throw light upon the matter in issue, irrespective of its tendency to convict or acquit the defendant, but may confine its efforts to bringing out the facts favorable to its side.

Where a homicide has been proven, the presumption is that it was murder in the second degree, and such presumption must be given force unless there is something in the case to rebut it.

*Appeal from Superior Court, Whitman County.*

Defendant was tried separately upon the following information, viz: ''Comes now J. N. Pickrell, prosecuting and county attorney for the county of Whitman, State of Washington, and, by his information, accuses Samuel McCown, Charles McCown and Champ Payne of the crime of murder in the first degree, committed as follows, to wit: That the said Samuel McCown, Charles McCown and Champ Payne, in the county of Whitman, in the state of Washington, on the 5th day of November, eighteen hundred and ninety-two, did then and there feloniously and purposely and of their deliberate and premeditated malice, kill and murder Langford Summers, by then and there feloniously and purposely

and of their deliberate and premeditated malice, cutting and mortally wounding him, the said Langford Summers, with a knife then and there had and held by them, the said Samuel McCown, Charles McCown and Champ Payne, contrary to the form of the statute," etc.

In connection with the failure of the prosecution to put in evidence the alleged dying statement of the deceased, as well as their refusal to place all the witnesses acquainted with the homicide upon the stand, the defendant requested the following instruction, which the court refused to give, to wit : " The state, gentlemen of the jury, in the administration of the law, demands only that justice be done. It is therefore important that the state should produce for the consideration of the jury all the evidence which would have a tendency to throw light upon the matter in issue, and if you find that the state neglected or refused to produce any matter of evidence in its possession that would have a direct tendency to either acquit or convict the defendant, you are justified in drawing an inference seriously unfavorable to the prosecution."

*James A. Haight* and *J. N. Pickrell*, Prosecuting Attorney, for the State.

Witnesses indorsed on information must be summoned, but need not be called. Wharton, Crim. Pl. & Pr., 565 ; 1 Bish. Crim. Proc., § 966 c ; *State v. Cain*, 20 W. Va. 679 ; *Morrow v. State*, 57 Miss. 836 ; *State v. Eaton*, 75 Mo. 586 ; *State v. Russell*, 32 Pac. 854. No duty rests on the prosecution to call all eye witnesses, where the testimony of those called is positive and covers the whole affray. *State v. McGahey*, 55 N. W. 753, containing a very complete review of the authorities. The Michigan rule is not undeviatingly applied, even in that state. *People v. Harris*, 95 Mich. 87.

*Thomas C. Griffitts* and *Chadwick & Fullerton*, for appellant.

The state must call the eye witnesses to the whole of the *res gestae*, the facts out of which the trial grows, or such a number as shall give rise to the belief that any further number would be cumulative. *Territory v. Hanna*, 5 Pac. 252 ; *Hurd v. People*, 25 Mich. 405 ;

*Maher v. People,*, 10 Mich. 212; *Wellar v. People,* 30 Mich. 16; *Thomas v. People,* 39 Mich. 309; *People v. Gordon,* 40 Mich. 716; *Reil v. Commonwealth,* 4 Am. Crim. Rep. 562; 3 Greenl. Ev. 29; Wharton, Crim. Ev., § 448; 1 Roscoe, Crim. Ev. (8th ed.), p. 210; *Rex v. Holden,* 8 Car. & P. 609; *Rex v. Stroner,* 1 Car. & K. 650; *Rex v. Chapman,* 8 Car. & P. 558.

The opinion of the court was delivered by

HOYT, J.—Appellant was charged with murder in the first degree. Trial resulted in a verdict of guilty of manslaughter. From the sentence therefor appellant has prosecuted this appeal.

He first claims that the judgment and sentence should be reversed, for the reason that the information did not state facts sufficient to constitute an offense. He fails to point out wherein it is insufficient, or to cite any authorities upon the subject. The information is in substantially the same form as those in common use, and such form has been approved by this court. See *State v. Day,* 4 Wash. 104 (29 Pac. 984).

The next ground for reversal is that there was a variance between the charge and the evidence introduced at the trial. The information charged the appellant, jointly with two other persons, with having killed the deceased by the use of a certain weapon therein described. Upon the trial it appeared that one Ed. Hill was the person who probably inflicted the wound which it is claimed caused the death of the injured party, and that the appellant and those joined with him aided and abetted the assault during which the wound was inflicted. Under our statute, an information is sufficient if the offense is charged in direct language, and the facts accompanying it are not so mis-stated as to prejudice the defendant in making his defense. From this fact we feel compelled to hold that the information was sufficient. There might be cases where the charge that one had committed a crime could not be established by evidence that he had aided and abetted another, but, under the circumstances of this case, this variance, if variance it was, was not so

material that the judgment should be reversed on account thereof.

The third, fourth and fifth assignments of error relate to substantially the same ruling. Evidence was admitted over the objection of the defendant as to the acts and statements of the appellant, and those joined with him and the said Hill, at a time prior to the commencement of the assault in which the fatal wound was inflicted. The court allowed such statements only to be put in evidence as were made by the appellant or by one of the others in his presence, and for that reason we think no error was committed in the admission of the testimony objected to. The statements and acts of the appellant, or those to which he was a party, were admissible for the purpose of showing the surroundings and circumstances which culminated in the assault. The jury were entitled to know the state of mind of the defendant and those with whom he was so intimately associated. Such knowledge would better enable them to determine the facts connected with the assault itself. This evidence was therefore admissible for the purpose of placing the jury in possession of the circumstances which led up to the assault in which the fatal wound was inflicted. It was also admissible by reason of the concert of action between the appellant and those joined with him in the information and the said Hill in the doing of unlawful acts which resulted in the homicide. To our minds it clearly appeared from the proofs that these persons were acting in unlawful concert. By reason of such concert they sought to intimidate those with whom they came in contact in the town of Garfield, and intended to jointly resist arrest by its authorities. Such facts were shown as to satisfy us that there was a deliberate intention to which these four were parties, to terrorize the law-abiding people of Garfield, and resist any attempt on the part of its officers to arrest them for so doing, and that it sufficiently appeared from the proofs that the assault in which the homicide was committed was brought about by their acts in pursuance of such intention. This

being so the court could have rightfully opened the door as to the statements and actions of one or all of these parties much wider than it did. Under the circumstances shown, the ruling of the court upon this question was at least as favorable to the appellant as the law required.

Assignments six, seven and eight grow out of the action of the court in denying appellant's motion that the prosecution be required to call certain persons therein specified who, it was alleged, had equal or superior knowledge of the facts with the witnesses already called by the prosecution. This ruling presents an important question of law—one upon which the authorities cannot be harmonized. In some of the states the rule contended for by appellant has been adhered to with great strictness, and the prosecution has been required, at the instance of the defendant, to call any one having knowledge of circumstances connected with the commission of the crime. In other states the rule has been laid down that the prosecution need offer only such evidence as it deems proper ; while in still others it has been held that it is a matter within the sound discretion of the trial court, and that its ruling in regard thereto will not be disturbed on appeal unless a clear abuse of discretion is shown. The latter, in our opinion, is the correct rule. The trial court is always in a better situation to understand the peculiar circumstances surrounding the trial than is the appellate court, and it can be safely left to it to determine when justice and fair dealing demand that the prosecution be required to introduce any particular line of evidence which it has seen fit not to offer of its own motion. Under our system of criminal trials the defendant is not entitled to the same consideration that he was under the rules which prevailed in remote times at common law. At that time the defendant was not in a situation to enlighten the court and jury as to the circumstances surrounding the commission of the alleged offense, and it was but right that the prosecution should be required to put in all the evidence within its knowledge which tended to throw light upon the subject. At the present time, a defendant appears with every facility for put-

ting before the jury any fact connected with the transaction which may have been omitted or insufficiently shown by the prosecution. He is assisted by able counsel, and there is no reason why the prosecution should be called upon in his interest to produce proof which in its opinion will not promote the ends of justice.

What we have said in reference to this question applies as well to the 15th assignment of error. The same line of reasoning which sustains the action of the court in refusing to require the prosecution to call all witnesses who had knowledge of the transaction will likewise sustain the action of the prosecution in failing to produce the alleged dying statement of Langford Summers, and the action of the court in refusing to give the instruction which it was claimed was made necessary by the action of the prosecution. It is true, as argued by appellant, that the prosecution never requires a victim ; all it desires is that justice may be done. But it does not follow that it is not justified in acting in a certain degree as a partisan. The object of a trial is that all the facts may be made to appear. If the prosecution is compelled to bring out the facts favorable to the defendant as well as those against him, and its action is supplemented by the efforts of the defendant, aided by able counsel, which may be and are entirely partisan, it is evident that more emphasis will be placed upon the facts upon one side than upon the other. To avoid this it is but natural and proper that the prosecution should content itself with bringing out the facts favorable to its side, and leave to the defendant the duty of showing those in his favor. In this way the facts will be fairly presented to the jury for their consideration, and they will be better enabled to arrive at the truth than they would with the additional emphasis on one side, which would result from the rule contended for by the defendant. At this time, and under the rules which now obtain in the trial of criminal cases, there is no reason why the prosecution should not be allowed to present its own case in its own way, and the defendant be required to do the same. Special cases require a different rule. But whether or not the circumstances

call for a change must be left to the sound discretion of the trial court.

The ninth assignment of error grows out of questions arising upon the introduction of expert proof as to the cause of the death of the injured party. We have examined the course of the prosecution and of the court in that regard, and are satisfied that no error to the prejudice of the defendant was committed.

The other assignments of error grew out of the action of the court in giving certain instructions to the jury, and in refusing to give those asked for by appellant. In addition to these alleged errors there are some other reasons for reversal suggested in the briefs, but they have been, or will be, sufficiently answered by the discussion upon other points. As to such instructions we shall only say that the learned court, in the most painstaking and careful manner, attempted to discharge its full duty to the public and to the defendant, and, in our opinion, succeeded admirably. With a single exception, which we shall hereafter discuss, the instructions when taken together were sustained by the authorities and were as favorable to the defendant as he could ask. If any criticism was to be made, it would be that they entered more into detail than was necessary. The whole law applicable to the case, in every aspect, was fully covered. Hence no error was committed in refusing to give the instructions specifically requested by the defendant.

The instruction which we have reserved for special consideration was to the effect that the homicide being proved, the presumption was that it was murder in the second degree. This proposition is the only one presented by the record in regard to which we entertain doubts. The authorities in regard thereto are not in harmony. Mr. Wharton discusses the question more from a theoretical standpoint than from that of the authorities. He concludes that no such presumption flows from the proof of the killing. He was able to find but few cases to sustain his conclusion, and a somewhat careful search has not led us to many additional ones. His high standing as a writer upon criminal law, however, com-

pels respect, and it is with great reluctance that we feel compelled to come to a conclusion different from his. It is conceded by all the authorities that, under the old common law rule, the killing having been shown, it would be presumed that murder had been committed. If this was the rule at common law, at a time when the mouth of the defendant was closed, and he was unable to explain the circumstances surrounding the killing, there would seem to be greater reason for its existence at the present time, when it is in his power to fully show the circumstances surrounding the transaction. The premeditation required to constitute murder in the first degree is a distinct element, having no relation whatever to the fact of the killing, and for that reason all of the authorities hold that no presumption of murder in the first degree flows from the proof of the killing; but as to murder in the second degree the reasons which induced the holding at common law still have force. Every one is presumed to intend the natural and necessary results of his actions. If he kills another he must, in the absence of a showing to the contrary, be presumed to have intended to kill him. And while it is true that even although he did intend to kill he may not be guilty of murder, or of any other crime, yet if he is not, it is by reason of some fact in justification of his action, the burden of proving which public policy demands should be cast upon him. If it is held that the fact of killing does not raise the presumption that it was malicious, the administration of criminal justice will be greatly interfered with. It is therefore the duty of courts to hold otherwise, if due care for the rights of the defendant will allow. Without such presumption to aid the prosecution it might happen that two persons would be alone in a room, and one kill the other, without any justification whatever, and yet the prosecution be utterly unable to secure his conviction, for the reason that there was nothing to show the circumstances surrounding the killing. Hence no presumption that it was other than justifiable could be established.

There may be some theoretical logic, if such a term may be

made use of, in the arguments of Mr. Wharton and others in reference to this question, but in practice justice will much more likely be done both to the alleged criminal and the public by indulging this presumption. Of course it would not be proper to instruct the jury that it was incumbent upon the defendant to overthrow this presumption by testimony in his own behalf. The proper instruction is that the presumption will have force unless there is something in the case to rebut it. Such was the instruction under consideration, and the better line of reasoning sustains it. Instructions like this are also sustained by the weight of authority

In *State v. Cain*, 20 W. Va. 679, the principle of the instruction under consideration was sustained to the fullest extent. In the opinion the court stated in substance that the killing having been shown, murder in the second degree will be presumed ; that if the prosecution desires to make it murder in the first degree it must prove the elements which distinguish it from murder in the second degree, and that if the defense desires to reduce it to manslaughter, or justifiable homicide, the burden is upon it. To the same effect is *Hill v. Commonwealth*, 2 Grat. 594.

This question has been frequently before the courts of the State of Missouri. In one case the Supreme Court of that state seemed to yield to the rule contended for by Mr. Wharton, but in other cases, several of which are subsequent to that, and one of which expressly overrules it, the rule for which we are contending has been so established that it is now the settled law of that state. See *State v. Gassert*, 65 Mo. 352 ; and *State v. Evans*, 65 Mo. 574. The same rule is also laid down by Lawson, in his work on Presumptive Evidence, p. 473, and sustained by cases cited in the foot note.

2 Thompson on Trials, § 2208, gives a form of instruction in almost the exact language used by the court in the case at bar, and sustains it by the citation in the foot note of the Virginia cases, and by the statement that it is believed that such instruction is now approved by almost all the courts. It is believed that where the killing was by the use of a

deadly weapon the presumption that it was malicious is generally recognized.

We have carefully examined this record, which is very voluminous, and are satisfied that every right of the defendant was protected by the action of earnest and able counsel, and that no error against him of sufficient magnitude to require a reversal was committed upon the trial.

The judgment and sentence will be affirmed.

DUNBAR, C. J., and SCOTT, ANDERS and STILES, JJ., concur.