[No. 12358. *En Banc.* December 8, 1915.]

ANNA MARY WELCH et al., *Respondents*, v. JOHN S. CREECH, *Appellant.*[1]

DEATH—WRONGFUL ACT—RIGHT OF ACTION — NEGLIGENCE — STATUTES. Under Rem. & Bal. Code, § 183, providing that the widow or children of a man killed in a duel shall have a right of action therefor, and that when the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, recovery for an intentional killing is not limited to killing in a duel, but may be had where one kills another wrongfully or by some neglect amounting to a tort, as in the case of shooting in supposed self-defense without warranted justification.

APPEAL — REVIEW — HARMLESS ERROR — CURED BY INSTRUCTIONS. Where evidence is received which would have been admissible if properly connected up with the case, error in its admission is cured by striking it out on motion and instructing the jury that it was stricken and could not be considered because not so connected with the case as to be entitled to go to the jury; as it will be presumed that the jury followed the instruction.

DEATH—WRONGFUL ACT—PLEADING—ADMITTED KILLING—JUSTIFICATION—QUESTION FOR JURY. In an action for wrongful death, a complaint alleging that the defendant wrongfully and negligently shot and killed a policeman who was lawfully upon defendant's premises in the performance of his duty, shows that the killing was done by a wrongful act; and where the killing was admitted, whether it was wrongful or justifiable is a question for the jury under all the circumstances.

[1]Reported in 153 Pac. 355.

EVIDENCE—PRESUMPTIONS—BURDEN OF PROOF—SHIFTING. A presumption of fact is not evidence, but a rule of law fixing the order of proof, and when proof is offered to rebut the presumption the burden shifts to the opposing party to sustain his case by competent evidence.

EVIDENCE—"PREPONDERANCE"—"BURDEN OF PROOF." There is a difference between the preponderance of the evidence and the burden of proof, the one being the weight of the evidence and the other a rule of law fixing the order of proof.

DEATH—WRONGFUL ACT—DEFENSES—KILLING IN SELF-DEFENSE—BURDEN OF PROOF—SHIFTING BURDEN. Admitting that a plea of self-defense in justification, in an action for wrongful death, assumes the burden of proof under the rule of evidence that an unexplained killing is presumed to be murder, the presumption is not evidence, and merely puts the burden upon defendant to rebut it; and when the *prima facie* case made by the admitted killing is met by showing that the killing was in self-defense, the burden shifts back to the plaintiff to establish by a fair preponderance of the evidence that the killing was wrongful and not in self-defense (MOUNT, ELLIS, and HOLCOMB, JJ., dissenting).

DEATH—WRONGFUL ACT—DEFENSES—KILLING IN SELF-DEFENSE—RES GESTAE—BURDEN OF PROOF. In an action for the wrongful death of a policeman, shot by the defendant under the mistaken belief that he was an intruder attacking the defendant and that the killing was necessary in defense of his own life, the defense arises out of the *res gestae*, which accordingly it is not incumbent upon the defendant to affirmatively prove; and if the jury can say that the admitted killing is reasonably explained and the explanation not challenged, it is incumbent upon the plaintiff to go further and show by a preponderance of the evidence that the killing was unlawful and not in self-defense (MOUNT, ELLIS, and HOLCOMB, JJ., dissenting).

SAME. In making out his case of self-defense, it was not necessary for the defendant to show more than that he had a reasonable apprehension of immediate danger and that he entertained a belief that it was necessary for him to kill his supposed assailant.

SAME—WRONGFUL ACT—DEFENSES—KILLING IN SELF-DEFENSE. In an action for the wrongful death of a policeman shot by the defendant under the mistaken belief that he was an intruder attacking the defendant and that the killing was necessary in defense of his own life, there is no affirmative defense, strictly speaking, the general issue being whether the killing was unlawful; hence the defendant, being entitled to submit under the general issue any evidence tending to sustain his defense, is not called upon to sustain the defense by a preponderance of the evidence (MOUNT, ELLIS, and HOLCOMB, JJ., dissenting).

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered February 9, 1914, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Reversed.

*Boner & Boner*, for appellant.

*Hugo Metzler* and *A. Emerson Cross*, for respondents.

CHADWICK, J.—The plaintiffs recovered a judgment for damages on account of the killing of Frank Welch by the defendant. The defendant has appealed.

The complaint, after alleging that Frank Welch, at the time of his death, was the husband of Anna Mary Welch, and the father of the minor plaintiffs, alleged, that, on the 3d day of June, 1912, Ella Creech, the wife of the defendant,

". . . while at her home on the property hereinbefore described, during the night time, at approximately the hour of 11:15 p. m., believing that there was some person prowling about the house, and property of the defendant herein, requested the police department of the city of Aberdeen to send an officer to protect her and her said property.

"That thereupon, and in pursuance of such request the above named Frank Welch was sent by said police department to the house of the parties defendant herein, and while making a search of the premises, under the supervision and direction of the said Ella Creech, and while lawfully upon the said premises for such purpose, the said John S. Creech, wrongfully and negligently did then and there shoot the said Frank Welch with a revolver, and as a result of the wound received by said Frank Welch from the said John S. Creech, the said Frank Welch did, within approximately one hour thereafter, die."

After a demurrer to the complaint had been overruled as to the defendant John S. Creech, he filed an answer to the complaint, admitting the formal allegations thereof, and in answer to the paragraph hereinabove quoted, alleged:

"That on the 3d day of June, 1912, Ella F. Creech, wife of defendant did request a policeman to come to their house on "H" street in the city of Aberdeen upon noticing that

the windows had been tampered with, and believing that some one was or had been upon the premises. That pursuant to said request, Frank Welch, a police officer came into the house of this defendant, and with Mrs. Creech did search about through the house, and left through the back door stating that Mrs. Creech and her daughter could go to bed now that there was no danger; that he would look around a little bit and would return again during the night; that a short time thereafter on said evening, about 10:30 or 11 o'clock, John S. Creech came home to his premises, and while walking to the house on the walk leading through the back yard, a man which later proved to be Frank Welch, without giving any warning of his presence, raised from the bushes in the back yard, and upon the premises of this defendant, and in the darkness pointed a revolver at this defendant, and at the same time shouted to him to "Stick 'em up," or words to that effect; that this defendant acting upon his reasonable and best judgment, and using the care and prudence that any reasonable and prudent man would use under like circumstances, there and then believed that his life was in immediate and imminent danger, and so acting and believing and for the purpose as he believed and had reason to believe of saving and defending his own life, fired at his said assailant, Frank Welch, with a revolver and killed him; that said defendant, John S. Creech, did not know that the said Frank Welch was a policeman, and had no means of knowing that he was upon his premises on any lawful mission, but believed that the said Frank Welch was about to commit a crime, and take the life of him, the said John S. Creech."

Upon these issues the case was tried to the court and a jury. At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant moved the court for a directed verdict. These motions were overruled, and thereafter the court instructed the jury, and a verdict was returned in favor of the plaintiffs.

Upon the trial of the case, these facts appeared, in substance: The appellant, John S. Creech, lived with his family in the city of Aberdeen, in Chehalis county. His place of business was in Raymond, in Pacific county, where he was running a sawmill. It was his custom to come from Raymond

to Aberdeen to his home on Saturday evening, and to return to Raymond on Sunday evening. On Saturday, the 1st day of June, he returned to his home as usual, and spent the following Sunday with his family, leaving Sunday evening for Raymond. On the next Monday evening, without notice to his wife, he returned from Raymond to the city of Aberdeen for the purpose, as he testified, of collecting some money which was owing to him. He arrived in Aberdeen at about 9:50 o'clock in the evening. At about 10:30 o'clock that same evening, Mrs. Creech telephoned to the police department in the city of Aberdeen to send a police officer up to her house. She refused to explain over the telephone what the trouble was. Frank Welch, who was detailed to go out to the house, arrived soon after 11:30 o'clock. He was informed that some one was prowling about the house. He then left the house by the back door for the purpose of examining the premises. After he had gone out of the back door, two shots were fired in the back yard. These shots were fired by the appellant, who testified, in substance, that, upon arriving in Aberdeen, and after a conversation with a friend in the city, he walked about eleven blocks from the city to his residence and came into his residence by the back way. As he came into the back yard, a man, who was then standing in some raspberry bushes therein, threw a flash-light upon him, and pointed a pistol at him, saying, "Stick 'em up." That, supposing this man was a robber, or intent on mischief, and in order to defend himself, he fired two shots which took effect. After firing the second shot, the appellant shouted: "Who are you? I am an officer!" To which Welch replied, "So am I." And then the defendant responded, "My God, why didn't you tell me so!"

Mr. Creech then, so he testified, assisted Mr. Welch to the back porch, where he sank to the ground and rested his head upon Mr. Creech's lap. Mr. Creech called to Mrs. Creech, who sent for the police and a doctor. Soon thereafter Mr.

Welch was removed to a hospital, where he died.  A revolver and a flash-light belonging to Mr. Welch were found near together in the raspberry bushes.  A watch was found in the back yard a short distance away.

The plaintiffs attempted to prove that this watch was the property of a man by the name of Kincaid, who had attended a dance where Mrs. Creech had attended, and that Mr. Creech had suspected an intimacy between his wife and Kincaid, and had returned home from Raymond to Aberdeen clandestinely that he might find this man at his home; and that, thinking the police officer was this man, had killed him as he went out from the back door.  At the trial, all the evidence relating to this watch, and relating to the supposed intimacy of Mrs. Creech with Mr. Kincaid, was excluded from the jury.  It is conceded that Mr. Creech was acquitted upon a criminal charge tried to a jury.

The appellant contends, first, that there can be no recovery under the statutes of this state, for the reason that the statute authorizes only a recovery for death by wrongful act or by negligence amounting to a tort, and does not apply to an intentional or malicious killing, except in cases of dueling.  The statute upon this subject is found at Rem. & Bal. Code, § 183, and is as follows:

"The widow, or widow and her children, or child or children if no widow, of a man killed in a duel, shall have a right of action against the person killing him, and against the seconds and all aiders and abettors.  When the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death."

It is argued by the appellant that this section authorizes a recovery only in a case of intentional killing in a duel; that the statute, being in derogation of the common law, should be strictly construed.  Conceding this latter position, we are convinced that the statute authorizes an action where death is caused by the wrongful act or the negligence of

another. It is no doubt true, as stated in *Northern Pac. R. Co. v. Adams*, 192 U. S. 440, that it is only when life is "wrongfully taken, that is, when it is taken in violation of the rights of the decedent, wrongful as against him," that the action can be maintained. Neglect stands in the same category as wrongful act. It implies some omission of duty. And it seems clear from the wording of the statute that it was intended that, where death is caused by a wrongful act, or by negligence, that is, a tortious act, the heirs or personal representatives may maintain the action where the deceased might have maintained it had he lived. And even if this statute is in derogation of the common law and must be strictly construed, it is so plain upon its face that there can be no escape from the conclusion that, where one man kills another, either wrongfully, unlawfully, intentionally, or by some neglect amounting to a tort, a recovery may be had in either event.

It is next argued by the appellant that the court erred in receiving evidence relating to the intimacy of Mrs. Creech with a man named Kincaid, and receiving and hearing evidence about the finding of the watch in the back yard of the appellant. The court, after permitting the evidence to be introduced, excluded it from the consideration of the jury for the reason that it was not shown that the watch belonged to Mr. Kincaid, or that Mrs. Creech and Mr. Kincaid had even friendly relations with each other. When the motion was made by the defendant to exclude this evidence, the court said:

"Ladies and gentlemen of the jury, the court will strike out all the testimony received, all the evidence concerning the watch and concerning Kincaid or concerning any conduct of Kincaid or Mrs. Creech in that connection, and that testimony will be stricken out and will not be considered by you, and also the conversation that Mr. Creech may have had with Kincaid, everything about the watch and Kincaid will be stricken out, and you will not consider it.

"The court finds that it is not so connected with the case as to be entitled to go to the jury or to be considered at all in this case."

This was clearly sufficient, we think, to cure any error which may have been committed by the court in receiving the offered evidence. If there had been sufficient evidence to connect these circumstances with the case, or to show that the defendant had knowledge of the facts, this evidence would no doubt have been admissible. But when the plaintiffs failed in this respect, it was the duty of the court to strike it out, which the court did. The error, if any, was certainly cured, if it could be cured. Counsel for the appellant, however, argue that impressions made by the receipt of such evidence would be weighed by the jury, and that this evidence was weighed and considered by the jury in arriving at their verdict. We must assume that the jury followed the instructions of the court. If they did so, they did not consider this evidence. The appellant cites the case of *State v. Cottrell*, 56 Wash. 543, 106 Pac. 179, and other cases. But that case was one where counsel insisted on asking questions which had been excluded, and insisted on getting before the jury evidence which the court had declined to receive, and in a case of that kind we held that the error was not cured. That is entirely different from this case. We are satisfied that no reversible error can now be claimed by reason of the original reception of the evidence.

It is next argued by the appellant that the court erred in refusing to direct a verdict, because there was no evidence of negligence on the part of the defendant, and no evidence tending to show a wrongful act; and that it does not appear affirmatively that the killing was not done in self-defense. It is true there was no evidence of negligence. While there is an allegation of negligence, the allegation in the complaint, hereinabove set out, shows a wrongful act. It was conceded by the defendant that he had killed the deceased. He no doubt intended to kill the deceased at the time he fired the

shots, or at least to do him bodily harm. It eventuated, after the shots were fired, that the deceased was not an intruder, but was on a lawful mission, and, because thereof, the appellant was mistaken when he fired the fatal shots. The killing was therefore wrongful, if not negligent; or at least, whether the killing was wrongful or justifiable was a question to be determined by the jury, in view of all the surrounding circumstances. Whether the plaintiff was required to show that the killing was not done in self-defense will be considered upon the instructions.

The appellant's counsel requested an instruction to the effect that the burden of proof rested upon the plaintiffs to establish by a fair preponderance of the evidence, not only the fact of the killing, but that the killing of Welch was wrongful and not in self-defense. The court refused this instruction and, instead thereof, instructed the jury as follows:

"The fact of such killing standing alone unexplained and unexcused would entitle plaintiffs to recover whatever damage may be shown.

"But defendant has pleaded and introduced evidence for the purpose of showing that he was excusable for the killing; that is, that he was lawfully acting in self-defense. And you are instructed that the burden of proof is on the defendant to show this fact by a preponderance of the evidence.

"If, therefore, upon a full and fair consideration of all the evidence in the case you believe from such evidence that defendant was lawfully acting in self-defense you will return a verdict in his favor; otherwise, you will find against him on that point, and will then consider as to the amount of damages."

It is insisted by the appellant that this instruction was error; that if the plaintiffs were entitled to recover at all, they were required to show, by a preponderance of the evidence, that the defendant killed the deceased, and that the killing was wrongful.

Admitting that one who pleads self-defense in justification of the killing of a human being assumes the burden of proof

under the rule of evidence that a killing, unexplained, is presumed to be murder, the rule is no more than this: Where the killing is proved or admitted, a *prima facie* case is made out, and when the killing is reasonably accounted for, the burden is met and shifts back to the plaintiff, where it belongs in all civil actions.

"A presumption of fact is not evidence, but a rule of law fixing the order of proof. When proof is offered to rebut the presumption, the burden shifts, and it is incumbent upon the opposing party to sustain his case by competent evidence." *Nicholson v. Neary*, 77 Wash. 294, 137 Pac. 492.

See, also, *Scarpelli v. Washington Water Power Co.*, 63 Wash. 18, 114 Pac. 870; Elliott, Evidence, §§ 92, 93, 139; Wigmore, Evidence, § 2491; 9 Ency. Evidence, 885, and Supplemental Title, "Presumptions."

A great deal has been said about the burden of proof, but a primary rule in all cases is that the one who has the affirmative of an issue must sustain it by competent proof. If that burden is sustained, either by fact or presumption of law, it is incumbent upon the defendant to balance the weight of evidence. If he does, there can be no recovery, for the plaintiff has not sustained his case by a preponderance of the evidence. There is a difference between what we call a preponderance of the evidence and the burden of proof. The one is the weight of evidence, the other is a rule of practice fixing the order of proof.

Mr. Thayer, in his comprehensive work, A Preliminary Treatise on Evidence at the Common Law, finds the expression of Lord Justice Bowen in *Abrath v. North-Eastern R. Co.*, 32 W. R. 53, to be a clear statement of the true rule. It follows:

"In order to make my opinion clear, I should like to say shortly how I understand the term 'burden of proof.' In every lawsuit somebody must go on with it; the plaintiff is the first to begin, and if he does nothing he fails. If he makes a *prima facie* case, and nothing is done by the other

side to answer it, the defendant fails.   The test, therefore, as to burden of proof is simply to consider which party would be successful if no evidence at all was given, or if no more evidence was given than is given at this particular point of the case, because it is obvious that during the controversy in the litigation there are points at which the *onus* of proof shifts, and at which the tribunal must say, if the case stopped there, that it must be decided in a particular way.   Such being the test, it is not a burden which rests forever on the person on whom it is first cast, but as soon as he, in his turn, finds evidence which, *prima facie*, rebuts the evidence against which he is contending, the burden shifts until again there is evidence which satisfies the demand.   Now, that being so, the question as to *onus* of proof is only a rule for deciding on whom the obligation rests of going further, if he wishes to win."

See, also, 2 Chamberlayne, Modern Law of Evidence, § 936.   This rule is adopted, but is not credited as a quotation, by Jones in his work on evidence.

In the case at bar, the killing was admitted and was reasonably accounted for by the defendant.   He testified to a state of facts which sustains his plea of self-defense, unless overcome by other facts and circumstances competent to prove a wrongful killing.

The court admitted certain testimony which has been referred to and which was undeniably offered to prove an evil intent—an intent to take human life.   Becoming apparent that this testimony could be connected up in no relevant way, and had been improperly admitted, it was stricken out by the court.   The case is left, therefore, in this situation:. the killing is admitted; the defendant has, by his own testimony, made a *prima facie* case of self-defense; his story, with all its attendant circumstances as revealed by competent evidence, if believed by the jury, is consistent with innocence. The circumstances mentioned, that defendant returned home without notice to his family, and that he returned to his home and entered by the back way, are both explained.   It was not the custom of the defendant to write to his family saying

that he was about to return to Aberdeen, and if he had so written, the letter would probably have gone on the same train with him. That fact, if proven, would have been a circumstance against him rather than in his favor. So far as entering the back way is concerned, the testimony shows that that was the usual and customary way for the family to enter. A sidewalk had been laid across the back lot for that purpose. It was the nearest way to go and return from down town.

The question for the jury was whether the *prima facie* case arising from the presumption attending the killing had been met. It is true that there are some cases holding that one who admits a killing under a plea of self-defense is bound to justify his act by a preponderance of evidence, that is, the greater weight of evidence; but in the greater number of jurisdictions it is held in criminal cases that it is sufficient if the evidence tends to raise a reasonable doubt.

It would seem that the latter statement is, of necessity, the better rule. The general burden to prove that the killing is unlawful is always upon the one who asserts it. The law, for convenient and humanitarian reasons, has seen fit to indulge a presumption which, in the prosecution of a criminal case, aids the state; or, in a civil action for damages for the killing of a human being, aids the plaintiff. That presumption, as is said by all writers, is not evidence. It only puts a burden upon the defendant to speak to the extent, at least, of rebutting the presumption that his admitted act is unlawful.

This court, in the case of *State v. Payne,* 10 Wash. 545, 39 Pac. 157, held that the burden resting upon a defendant in a criminal case was no greater than to rebut a presumption of malice. In several cases where the law puts upon a defendant the burden of explaining his possession of goods or property recently stolen, this court has held the presumption to be met by a reasonable explanation. Courts have held, with almost entire unanimity of opinion, that, upon all

issues arising out of the *res gestae*, a defendant is never required to prove affirmatively, by weight of evidence, any controverted fact. It is only in cases where the defendant submits an issue that is independent of the main issue, one that depends upon facts within his own knowledge, and which are extraneous to the charge made against him. Wharton, Criminal Evidence (10th ed.) 720. The defense of insanity may be instanced, although the degree of proof with which a defendant must sustain that issue is controverted and the authorities are divided. *State v. Clark*, 34 Wash. 485, 76 Pac. 98, 101 Am. St. 1006.

The defense in this case arises out of the *res gestae*, and if the jury can say that the killing has been reasonably explained, and the explanation is not challenged by any independent fact or circumstances, or by the testimony of any witness, it then became incumbent upon the plaintiff to go further and show, by independent evidence, that the killing was unlawful.

If we say that it is incumbent upon the state in a criminal case to make out its case beyond a reasonable doubt, the corollary of that statement necessarily follows. That is, if any evidence, either that of the state or that offered by the defendant, raises a reasonable doubt, the defendant is entitled to an acquittal. In the criminal case which was prosecuted against him, defendant has had the benefit of that rule and has been acquitted.

In making out his plea of self-defense, the defendant was not bound to show more than that he had a reasonable apprehension of immediate danger; that he entertained an honest belief that it was necessary for him to kill his supposed assailant. If the rule relied on prevailed, it must be said that a defendant, in a civil suit for damages for the wrongful killing of another, must meet the presumption that the killing was unlawful by showing, not that he was reasonably apprehensive of danger or that the peril seemed imminent to him, but he must go further and show that danger was actual, for

it is only in this additional showing that there can be found any room for the application of the term "preponderance of evidence." We will refer briefly to the cases relied on to sustain the judgment.

*Tucker v. State, Use of Johnson,* 89 Md. 471, 43 Atl. 778, 44 Atl. 1004, 46 L. R. A. 181, is based primarily upon the case of *Commonwealth v. York,* 9 Metc. (Mass.) 93, 43 Am. Dec. 373, where the rule is laid down that a defendant in a criminal case, who sets up a plea of self-defense in justification of the killing, must prove his tendered issue by a preponderance of the evidence. It follows, therefore, that this case, and all cases like it, should not be followed as authority in this state where the rule is that, if a reasonable doubt be raised, the defendant is entitled to an acquittal. It may be said that such is the modern rule laid down by the text writers and the great majority of the cases.

The case of *Rutherford v. Foster,* 125 Fed. 187, and *Daniel v. Petersburg R. Co.,* 117 N. C. 592, 23 S. E. 327, 4 L. R. A. (N. S.) 485, may be disposed of in the same way. They, too, follow the case of *Commonwealth v. York. State v. Willis,* 63 N. C. 26, like the principal case, follows the *York* case. *New Orleans & N. E. R. Co. v. Jopes,* 142 U. S. 18, does not touch the question. The case of *McKenzie v. Oregon Imp. Co.,* 5 Wash. 409, 31 Pac. 748, does not bear in any degree upon the question before us. That case was a civil action upon a promissory note. The execution of the note was admitted. The defendant tendered the issue of no consideration. Upon this sole issue he necessarily had the burden of . proof, and was bound to sustain it by a preponderance of the evidence. It was the affirmative of the only issue before the court.

In the *McKenzie* case, the execution of the note was admitted. In this case, an unlawful killing is not admitted. The presumption did not operate as an admission. An admission is evidence. A presumption is not. An admission changes the burden of proof in the sense that the plea of

confession and avoidance must be sustained by the weight or preponderance of evidence. A presumption simply changes the order of proof to the extent that one upon whom it bears must meet or explain it away. When such explanation is made, the duty is upon a plaintiff to take up the burden which the law has cast upon him and sustain the issue by a preponderance of the evidence. It neither depends upon evidence nor is it sustained by evidence. It follows that, when the defendant has balanced that presumption by a reasonable and unimpeached explanation, he is entitled to a verdict, unless there is a showing by independent testimony of an unlawful killing. Wharton, Criminal Evidence (10th ed.), § 334.

The distinction between burden of proof and preponderance of evidence is well stated in the case of *Smith Sand & Gravel Co. v. Corbin,* 75 Wash. 635, 135 Pac. 472, where it is said:

"*Prima facie* case means only that the case has proceeded upon sufficient proof to that stage where it must be submitted to the jury, and not decided against the plaintiff as a matter of law. A *prima facie* case does not necessarily mean that judgment goes in favor of the plaintiff as a matter of law. The jury are still the judges of the sufficiency of the showing to call for a verdict in plaintiff's favor, and where there is no affirmative defense, strictly speaking, the jury are to measure plaintiff's rights, having in view that he has the burden of proof."

In this case there is no affirmative defense, strictly speaking. The general issue is whether the act of killing was unlawful, and the defendant had the right, under that general issue, to submit any evidence which tended to sustain his defense, whether it be *non est factum* or self-defense. To repeat, it is only in those cases where there is an affirmative defense resting upon facts which are not dependent upon, or do not grow out of, the *res gestae,* and which are pleaded as a separate and affirmative defense, that a defendant is bound to

sustain his case by a preponderance of the evidence. In either a civil or criminal case, a defendant is never called upon to prove by a preponderance anything that is competent to be proved under the general issue.

In Massachusetts the rule announced in the *York* case has led to considerable confusion. The confusion was foreseen by the court, for it had to admit, and did say, that

"Where there is evidence on both sides, it is hardly possible to imagine a case in which there will not be a preponderance of proof on one side or the other. But if the case, on the evidence, should be *in equilibrio,* the presumption of innocence will turn the scale in favor of the accused; that is, in a case like the present, in favor of the lesser offense. *But if the evidence, in the opinion of the jury, does not leave the case equally balanced, then it is to be decided according to its preponderance." Commonwealth v. York,* 9 Met. 93, 43 Am. Dec. 373.

This expression, in the opinion of Mr. Wharton (Wharton, Criminal Evidence, 9th ed., § 335), seems to concede that, if there is a reasonable doubt as to malice, defendant must be acquitted. The court should have instructed along the lines indicated. Such instructions were fairly requested by the defendant.

Reversed, and remanded for a new trial.

MORRIS, C. J., MAIN, FULLERTON, and PARKER, JJ., concur.

MOUNT, J. (dissenting)—In my opinion, the instructions given and above discussed were correct. I therefore dissent.

ELLIS, J., concurs with MOUNT, J.

HOLCOMB, J. (dissenting)—The appellant answered by way of a plea of confession and avoidance. 31 Cyc. 128. He admitted the killing, but avoided its legal effect by pleading an excuse therefor, alleging affirmatively that, although he did in fact kill respondents' decedent, he did so under such

conditions and circumstances "as by law he well might," in legal effect. This was necessary to be *specially* and affirmatively pleaded. 4 Ency. Plead. & Prac. 667; Rem. & Bal. Code, § 264.

Under no system of jurisprudence that I have ever noticed has it ever been consistently held that such a plea, to avail, need not be supported by a preponderance of proof. An affirmative defense is "subject to the same rules as the case of a plaintiff who has the affirmative of an issue." *Wadhams v. Page*, 6 Wash. 103, 32 Pac. 1068.

Furthermore, the decision in this case would adopt a much more liberal and lenient rule in civil cases than prevails in homicide prosecutions in this state, and the decisions of this court in a number of homicide cases from *State v. Payne*, 10 Wash. 545, 39 Pac. 157, down to *State v. Clark*, 58 Wash. 128, 107 Pac. 1047, are wholly departed from or overruled.

The instruction in question was undoubtedly correct and should be approved and the judgment affirmed. I therefore dissent.