[No. 21194. Department Two. November 30, 1928.]

THE STATE OF WASHINGTON, *Respondent*, v. LULU
ETHEL GRUBER, *Appellant*.[1]

[1]Reported in 272 Pac. 89.

*Guy O. Shumate* and *Rummens & Griffin,* for appellant.

*Ewing D. Colvin,* for respondent.

PARKER, J.—The defendant, Mrs. Gruber, was, by information filed in the superior court for King county, charged with murder in the first degree, as follows:

"She, said Lulu Ethel Gruber in the county of King, state of Washington, on the 12th day of June, A. D. 1927, did then and there wilfully, unlawfully, feloniously and with a premeditated design to effect the death of one Charles E. Gruber, a human being, shoot at, toward and into the body of said Charles E. Gruber, with a certain deadly weapon, to wit, a pistol then and there loaded with powder and ball, and then and there held by her the said Lulu Ethel Gruber, thereby mortally wounding said Charles E. Gruber from which said mortal wounds the said Charles E. Gruber then and there died."

The Charles E. Gruber charged to have been so killed by Mrs. Gruber was at that time her husband. She pleaded not guilty, and the case proceeded to trial in the superior court, sitting with a jury, and resulted in a verdict against her, finding her guilty of murder in the second degree, upon which verdict judgment was by the court rendered, sentencing her to imprisonment in the penitentiary for the term of not less than ten years and not more than ten years and one day. From this final disposition of the case in the superior court, Mrs. Gruber has appealed to this court.

At the time charged as the date of the killing of Gruber, he was about forty-five years old, and appellant, Mrs. Gruber, was about forty-two years old. They had been married some twenty-four years, and for a number of years had led an inharmonious marital life. They had two children, one married daughter, twenty-one years old, and a son nine years old. In 1923, they came to Seattle and purchased a home there, in which they lived up to near the time of the tragedy here in question.

On June 1, 1927, appellant commenced against Mr. Gruber, in the superior court for King county, an action seeking a divorce upon the ground of cruelty. He, being then evidently convinced that she would be by the court awarded a divorce in that action, consented to a division of their property interests. They entered into a written contract accordingly, by which he was given the home place and she was given the household furniture and certain other property; she to have the custody of the nine year old son, and he to contribute toward his son's support and education. Soon thereafter appellant went to the apartment home of her parents several blocks distant, and during the following few days she and her parents made arrangements to establish a new home together. They procured a dwelling house, several blocks distant from the former Gruber home, and about June 9th appellant caused her furniture to be moved from her former home into the new home. In doing this she took pains to avoid having Gruber learn where she had moved to, claiming that she was afraid of his annoying her.

He evidently did not learn of the location of her new home until the morning of June 12th, when the tragedy occurred. At about half past ten o'clock that morning, appellant and her mother went from the parent's apartment home to the new home, which was about ready for occupancy. While there, Gruber drove up and parked his automobile in the street near the house, and came up the front steps and in the front door, as appellant claims, without knocking. Some words were then exchanged between them, followed by five shots from a revolver in the hand of appellant. One bullet entered Gruber's lower jaw, three bullets entered his chest, and one bullet entered almost the middle of his back. Gruber fell on the floor and died almost immediately. Appellant threw the revolver on the floor.

It lit upon the hand of Gruber's outstretched arm lying on the floor, where it was found by the police officers who arrived in a very short time.

It seems plain to us that the jurors had no occasion to hesitate in viewing these facts as clearly proven beyond doubt, as they manifestly did so view them. Other facts will be noticed by us in connection with the several claims of error we find it necessary to discuss, but we think this summary constitutes a sufficient outline of the principal facts as a background to our discussions. The theory of the defense is justifiable homicide; that is, lawful exercise by appellant of the right of self-defense.

 One of the assignments of error made in behalf of appellant is that:

"It was an abuse of discretion for the trial court to refuse to grant a new trial on the ground that the verdict was contrary to the evidence."

The argument in support of this claim of error seems to proceed principally upon the theory that the trial judge felt unduly bound by the verdict of the jury, evidenced, as it is argued, by his remarks expressing doubt as to the weight of the evidence supporting the verdict, and by his sentencing appellant to the shortest term of prescribed punishment for murder in the second degree. See Rem. Comp. Stat., § 2393. The record, we think, fails to show that the verdict of the jury caused any sensible, undue restraint upon the trial judge in the exercise of his discretion in refusing to set aside the verdict and award a new trial for want of sufficiency or weight of evidence supporting the verdict, as was within his discretion under subd. 7, § 399, Rem. Comp. Stat.

Plainly, we think this is not a case of a trial judge declining to grant a new trial, upon this ground, because of his conceiving himself bound by the verdict

of the jury. We are of the opinion that the trial judge freely exercised his discretion, without any feeling of undue restraint by the verdict of the jury, and we are also of the opinion that he did not abuse his discretion such as to call for our interference.

The argument in support of this assignment of error in some measure suggests a contention that the trial court should have taken the case from the jury and dismissed it, and so ruled as a matter of law, because of entire failure of proof of appellant's guilt of murder in either first or second degree, though no formal assignment of error is made in that behalf. Even so viewing the contention and assuming that the question is before us by proper assignment of error, we are clearly of the opinion that the case should not have been so disposed of.

 It is contended that the court erred, to the prejudice of appellant, in permitting Dr. Croson, a deputy coroner of King county, to testify as to the relative distance from which the shots were fired into the body of the deceased. This witness examined the wounds critically soon after the shooting. He was an experienced physician and had considerable experience in examining and observing gunshot wounds with a view of determining the manner in which they were inflicted. He testified to his belief that one of the shots was fired from a distance of one foot, and that the other shots were fired at a "much greater distance." His opinion as to these varying distances was based upon his view of the wounds and the clothing through which the shots entered, the varying degrees of smoke and powder marks around the places where the shots entered, and the shape of the holes in the clothing and body made by the shots.

The argument is directed particularly against the admissibility of the doctor's testimony as touching a

subject-matter not provable by expert opinion testimony. This may not be a question of technical expert testimony, but we are of the opinion that the doctor's testimony was, under the circumstances, admissible as opinion evidence tending to show that the shots were fired into the body of the deceased from varying distances of from one to several feet, which was a material inquiry, particularly in view of appellant's defense of justifiable homicide. The following authorities support this conclusion: *State v. Johns,* 152 Iowa 383, 132 N. W. 832; *State v. Hart,* 118 Wash. 114, 203 Pac. 4; Underhill's Criminal Evidence (3d ed.), § 193.

 It is contended that the court erred, to the prejudice of appellant, in permitting the witness Baker to testify as to the results of several experiments made by him in firing the revolver from which the shots were fired into the body of deceased. Baker was experienced in the use of firearms and had made a special study of the effect upon various substances of firing into them at various distances, particularly as to smoke marks and as to the nature and shape of the holes made by the entry of the shots.

We think the court was fully warranted in regarding him as an expert in that line. The experiments made by him, the result of which he testified to, were made out of the presence of the jury, prior to the trial, and consisted of firing the revolver, from varying distances of from very close up to six feet, into a number of pieces of cloth substantially of the same make and texture worn by the deceased, through which the shots passed at the time he was killed; also firing from similar varying distances into pieces of cardboard; also firing from similar varying distances into pieces of wood; all of such firing being with ammunition which the trial judge was well warranted in concluding was of substantially the same make and

character as constituted the ammunition fired from the revolver into the body of the deceased.

The purpose of the experiments was to determine the varying effects of such shots, as to powder marks and shape and character of the holes where they entered, and thus, by comparison with the powder marks and character and shape of the holes where they entered the clothing and body of the deceased, furnish some evidence of the approximate varying distances at which the shots were fired into the body of the deceased. This, of course, was a matter of concern touching the state's case, particularly in view of appellant's self-defense theory.

The argument directed against the admissibility of this witness's testimony, as to the results of these experiments, is rested upon the theory that they were not shown to have been made attended by substantially similar conditions as attended the firing of the revolver at the time of the shooting of the deceased, in that the cloth, cardboard and pieces of wood fired into were not similar substances to those into which the shots entered at the time the deceased was killed, and in that the ammunition was not proved to be of substantially the same character.

We think the trial judge exercised sound discretion in determining, from the preliminary evidence presented to him, that the conditions were sufficiently similar, in so far as the ammunition and the substances fired into are concerned, for the purpose of showing the varying smoke and powder marks and the varying nature of the holes made by the entry of the shots, for the purpose of making a just comparison with those shown upon the body and clothing of the deceased from the shots fired at the time he was killed. *State v. Melvern,* 32 Wash. 7, 25, 72 Pac. 489; *Lasityr v. Olympia,* 61 Wash. 651, 112 Pac. 752; *Amsbary v.*

*Grays Harbor R. & L. Co.,* 78 Wash. 379, 139 Pac. 46, 8 A. L. R. 1. We conclude that there was no error to the prejudice of appellant in the receiving of the testimony of this witness as to the result of the experiments in question.

■ It is contended that the trial court erred, to the prejudice of the appellant, in refusing to permit three certain witnesses to testify to the making of statements by the deceased upon the day immediately prior to the shooting. The theory of this offer of proof was that such statements indicated a degree of ill-will against appellant by deceased suggesting an intent to physically harm her. While the statements of the deceased so sought to be shown could be construed as indicating some ill-will on the part of the deceased and some intent on his part not to abide by the property division contract, such statements fell far short of indicating any intent to physically harm her. Plainly, we think appellant was not entitled to have these alleged statements of the deceased put before the jury in support of her claim of lawful exercise of self-defense.

■ It is contended that the trial court erred, to the prejudice of appellant, in permitting the nine-year-old son of the deceased and appellant to testify as a witness for the prosecution. The argument is that ''his examination disclosed that he had no stability of thought or just impressions of facts.'' The trial judge painstakingly examined the boy and permitted counsel for the defense and prosecution also to examine him with a view of determining his competency, and, being satisfied that he was competent, though of tender years, permitted his examination to proceed, at which time no objection or exception was taken by counsel for appellant to that ruling of the court. Thereafter, by reason of the manner in which the boy

answered some inquiries put to him while testifying, the trial judge seemed to have become somewhat doubtful as to whether or not the boy's testimony ought to have been received or be permitted to remain in the case. However, he finally became thoroughly convinced that the boy's testimony was properly received as coming from one competent to testify. An examination of the record makes it clear to us that in receiving and allowing to remain in the case this boy's testimony, the trial judge did not abuse his discretion. Section 1213, Rem. Comp. Stat.; *State v. Whitfield,* 129 Wash. 134, 224 Pac. 559; *State v. Priest,* 132 Wash. 580, 232 Pac. 353.

Contention is made that the trial court erred, to the prejudice of appellant, in permitting the prosecuting attorney to open the case, after the defense had rested, and permit one Kellogg to then testify. The most important testimony then given by Kellogg was clearly rebuttal testimony. Plainly, there was no error in permitting him to give such testimony at that stage of the trial, regardless of whether or not the case was properly opened for the purpose of receiving testimony other than in rebuttal. It is plain that the opening of the case for further testimony, apart from rebuttal testimony, was a matter within the sound discretion of the trial court, and we are clear that, under the circumstances appearing, that discretion was not abused.

In this connection, however, it is contended that the trial court erred, to the prejudice of appellant, in not at that time granting her counsel's request for a continuance. The denial of this request we also think was without prejudice to the rights of appellant. The defense had two witnesses available who could have been produced in a very short time, if they were not then actually present in the courtroom, having knowledge

of the not very important fact, testified to by Kellogg, in addition to his strictly rebuttal testimony.

The continuance, manifestly, was not sought for the purpose of having time to produce these two witnesses, but was sought for an indefinite time to produce another witness, one Soden, which the subsequent showing upon motion for new trial indicates would have been of but little avail to appellant, and whose testimony in any event would have been nothing more than cumulative of the two witnesses who could have been produced in her behalf to contradict the testimony of Kellogg. We are of the opinion that the court did not err in denying the continuance asked for.

One of the jurors, upon her *voir dire* examination, testified as to the place of her residence, which appeared to be within a block or two of the scene of the tragedy. She, with manifest fairness, answered all questions put to her at that time touching her qualification as a juror in the case. She did not, however, then relate an incident which it is contended brought her in close touch with the tragedy and gave her some knowledge of it. That incident at the most was only this: When the shooting occurred, her children happened to be on the street, evidently in front of their own home. A considerable number of people had been attracted to the immediate vicinity of appellant's house upon the shooting occurring. This juror, not knowing of the occurrence of the tragedy, went upon the street to look for her children. She found them in the street about one hundred feet distant from appellant's house. She called her children and took them home, making no inquiry whatever as to the tragedy or the cause of it, though hearing incidentally that someone had been shot. She later read some account of the shooting in the newspaper, as several of

the jurors did; otherwise she had no knowledge whatever of the facts in the case.

The showing made upon the motion for a new trial, in addition to the *voir dire* examination of the juror, fully convinced the court that she was not in the slightest measure disqualified as a juror by reason of any knowledge of the tragedy acquired by her prior to her being called as a juror. Clearly, we think that the trial court was justified in ruling, upon the motion for new trial, that she was not incompetent as a juror, or that she had in the slightest degree violated her duty incident to her becoming a juror.

One of the grounds for new trial was newly discovered evidence. It consisted of what was claimed one Soden would testify to upon a new trial. It was, in substance, that he would contradict the testimony of the witness Kellogg, which we have already referred to, and that he would testify to some statements made by the deceased indicating ill-will towards appellant. As to the former, what we have already said is sufficient. As to the latter, it is sufficient to say that his proposed testimony as to statements indicating ill-will of the deceased towards appellant falls far short of indicating that such ill-will meant that he, the deceased, had any intention of physically harming appellant.

Clearly, we think, the trial court did not abuse its discretion in ruling that this alleged newly discovered evidence did not call for a new trial. We may add that it is hard to believe, from the showing made, that the testimony of this witness, sought to be brought into the case by a new trial, was newly discovered; but as to that we need not now decide.

One of the grounds for new trial was alleged misconduct of the prosecuting attorney, consisting only of the fact that he waived opening argument to

the jury after the close of the evidence. Counsel for appellant thereupon made the first argument to the jury, as to which he was not in the least restrained. The prosecuting attorney then made an answering argument. There is nothing in the record to indicate that he made such argument other than in strict answer to the opening argument made by counsel for appellant. Thereafter the court permitted counsel for appellant to make a reply argument to the answering argument made by the prosecuting attorney. While these arguments were not made in the usual order, no authority has been called to our attention holding that counsel for the prosecution may not waive opening argument to the jury. Section 339, Rem. Comp. Stat., prescribes the order of argument and reads in part:

"When the charge shall have been given by the court, the plaintiff, or party having the burden of proof, may, by himself, or one counsel, address the court and jury upon the law and facts in the case, after which the adverse party may address the court and jury in like manner, by himself and one counsel or by two counsel, and be followed by the party or counsel of the party first addressing the court."

We find nothing in this statute indicating to our minds that counsel for the plaintiff, either in a civil or criminal case, may not waive his right to make an opening argument, though it may be inferred that if he does make such waiver, he shall be confined in his answering argument to strictly answering his adversary. It seems clear to us that the manner of presenting argument to the jury in this case, particularly in view of the court's permission to counsel for appellant to close the argument, did not furnish any ground of complaint on the part of appellant.

The ruling of the trial court touching the conduct of counsel in argument to the jury must be left largely

to the discretion of the trial judge, except as there may be mandatory statutory provisions relating thereto. 38 Cyc. 1471; 16 C. J. 887.

██ It is contended, in behalf of appellant, that the trial judge erred, to her prejudice, in giving to the jury the following instruction:

(2) "When the killing of one human being by another is proven beyond a reasonable doubt, the law presumes that such killing constitutes murder in the second degree. If the state would elevate it to murder in the first degree, it must prove beyond a reasonable doubt that such killing was premeditated."

It is argued that it is not a mere killing, proven beyond a reasonable doubt, that gives rise to the presumption of murder in the second degree, but that it is a felonious killing, proven beyond a reasonable doubt, that gives rise to the presumption of murder in the second degree. In support of this argument our decision in *State v. Tyree,* 143 Wash. 313, 255 Pac. 382, is invoked, wherein there was drawn in question the failure of the trial judge to give to the jury any presumption-of-innocence instruction favorable to the defendant, the trial court evidently being of the opinion that such presumption was not there applicable because the killing was admitted, but sought to be justified by a claim of lawful exercise of self-defense. Holding the failure to give such instruction to be erroneous in that case, we said:

"The state's excuse for the failure to give this instruction is that, the killing having been admitted, the presumption of murder in the second degree attaches and that thereby the presumption of innocence no longer obtains. While it is true that, ever since the decision of *State v. Payne,* 10 Wash. 545, 39 Pac. 157, it has been the law that, where homicide has been proven, the presumption then is that it is murder in the second degree; yet this will not excuse the failure

to give the presumption-in-favor-of-innocence instruction. The two presumptions are not necessarily antagonistic, for the defendant is presumed innocent until his guilt has been proven beyond a reasonable doubt, and, although the killing may be admitted, the presumption which then arises is as to the degree of the crime of which he is guilty, and is not proof beyond a reasonable doubt that the defendant is guilty of any crime. Throughout the trial, until his guilt has been established beyond a reasonable doubt, he is presumed to be not guilty of any crime; but the killing having been admitted, the presumption then is that the crime, if any, of which he is guilty, is that of murder in the second degree.''

In the case before us the trial judge gave this instruction:

(16) ''You are instructed that the law presumes the defendant to be innocent until she is proven guilty beyond a reasonable doubt. This presumption is not a mere matter of form, but it is a substantial part of the law of the land, and it continues throughout the entire trial and until you have found that this presumption has been overcome by the evidence beyond a reasonable doubt.''

This, it seems to us, obviated the only error discussed in the *Tyree* case. Instruction No. 2, here complained of, has been, in effect, approved in the following of our decisions: *State v. Payne,* 10 Wash. 545, 39 Pac. 157; *State v. Melvern,* 32 Wash. 7, 72 Pac. 489; *State v. Clark,* 58 Wash. 128, 107 Pac. 1047; *State v. Totten,* 67 Wash. 192, 121 Pac. 70; *State v. Drummond,* 70 Wash. 260, 126 Pac. 541; *State v. Hawkins,* 89 Wash. 449, 154 Pac. 827; *State v. Duncan,* 101 Wash. 542, 172 Pac. 915; *State v. Cook,* 126 Wash. 81, 217 Pac. 42. There does seem to be room for arguing that there should have been embodied in Instruction No. 2, though in this form repeatedly approved by this court, the thought that it is a felonious

killing that gives rise to the presumption of murder in the second degree, and not the mere killing that gives rise to the presumption of murder in the second degree.

However, the law now seems settled that the giving to the jury of a fair presumption-of-innocence instruction, such as given in this case, sufficiently informs the jury that the presumption of murder in the second degree arising from the killing is, at all times to the end of the case, subject to the further all-embracing presumption of innocence. We conclude that the giving of Instruction No. 2, it being followed by the presumption-of-innocence instruction, above quoted, was not erroneous to the prejudice of appellant.

It is contended, in behalf of appellant, that the trial judge erroneously failed to state all of the elements of murder in the first degree in his instructions to the jury defining that degree of homicide. While there may be some ground for just criticism in that behalf, it is at all events clear to us that, because of appellant's being found and adjudged guilty of murder in the second degree only, whatever technical error there may be in this instruction was in no event prejudicial to appellant's rights, in view of the jury failing to find her guilty of murder in the first degree. We do not understand counsel as making any claim of error, in behalf of appellant, that the trial court erroneously defined murder in the second degree.

Some other claims of error are made in appellant's behalf, all of which we have carefully examined, and deem it sufficient to say that we do not regard them as of such substantial merit as to call for further discussion here. We are unable to see from the record before us but that appellant has in all respects had a fair trial, free from prejudicial error such as would

warrant us in interfering with the verdict and judgment rendered against her.

The judgment is affirmed.

FULLERTON, C. J., MAIN, FRENCH, and ASKREN, JJ., concur.

---

[1]Reported in 272 Pac. 80.