[No. 36089. Department Two. April 19, 1962.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK E. COOKE, *Appellant.**

*Reported in 371 P. (2d) 39.

 

*Harvey Erickson,* for appellant.

*John J. Lally* and *Art Hansen,* for respondent.

HUNTER, J.—This is an appeal from a judgment of conviction on four counts of the crime of grand larceny and a sentence on each count of not more than 15 years in the Washington state penitentiary, said sentences to run concurrently.

The defendant (appellant), Frank E. Cooke, was a salesman employed by Allied Service Company, a Minnesota corporation, which was a seller of cigar dispensing machines to local dealers and handled the wholesale marketing of cigars for the machines.

In early September, 1960, an advertisement appeared in two daily newspapers in the city of Spokane, and stated, very generally, the nature of a cigar dealership offered and requirements necessary for one to obtain the position. Thirty-one persons answered this advertisement by making written application to a Spokane address given therein.

The defendant came to Spokane in the middle of September and contacted, among others, the four complaining witnesses in this case. Written contracts were entered into with each of the complaining witnesses and they gave money to the defendant as a part of the purchase price, which he sent to Allied Service Company in Minnesota. He, in turn, was paid commissions by the company for the sales he negotiated. Each complaining witness entered into the contract without knowledge that the defendant had made contracts or was going to make contracts with any of the others.

The four counts in the information charged the defendant with making the same false representation to each complaining witness. The offenses charged are that the defendant fraudulently represented to the purchasers that they were obtaining an exclusive agency, franchise or dealership for the use of the cigar vending machines furnished by Allied Service Company, which was relied upon and induced them to part with their money.

At the close of the trial, the jury returned verdicts of guilty on each count and the defendant, thereafter, was sentenced.

The defendant first contends that the facts alleged and proved, as a matter of law, are not sufficient for a conviction of the crime of larceny by false pretenses, as set forth in RCW 9.54.010. The defendant bases his argument on the undisputed fact that each complaining witness signed written contracts which contained the following provisions:

"(B) The territory assigned to Purchaser is as follows: Spokane—Plus a [distance inserted] radius around the city limits.

"(C) Supplementary Conditions:

"The Purchaser fully understands that this purchase order and agreement is complete in itself and cannot be rescinded; that it contains all of the terms of the agreement between the purchaser and the company.

"I have read this order through and understand all of its terms and conditions and hereby acknowledge receipt of a copy of same."

It is asserted that the written contract is plain and unambiguous in describing the terms and that there is no agreement for an "exclusive" franchise. It is then argued that since the factual circumstances would not support a defense of fraud in a suit upon the contract to recover the purchase price, the facts also will not support a criminal charge of fraud. However, the record contains evidence which clearly can support the jury's finding that the defendant actually did knowingly make the oral false representations as stated in the information, and with the exception of count IV, the defendant does not dispute there is evidence to support a jury's finding that the complaining

witnesses *actually* relied on the false representation and, thereby, were induced to part with their money. The gist of this argument, therefore, is that the complaining witnesses, as a matter of law, had no right to rely on the asserted false representation and must be charged with having relied upon the terms of the written contract.

We do not find it necessary to decide whether the defendant is correct in his assertion that the written contracts are unambiguous and do not provide for an exclusive franchise. Even assuming that the assertion is correct, we are of the opinion that there is sufficient evidence in the record, if believed, to support a conviction of the crimes charged.

In *Haagen v. Landeis,* 56 Wn. (2d) 289, 352 P. (2d) 636 (1960), upon which the defendant relies, the plaintiff sued upon a written contract which contained a so-called "merger clause" stating that "This agreement contains the entire understanding between us and no representation or inducement has been made that is not set forth herein." The defendant attempted to avoid the contract by claiming fraudulent representations were made by the plaintiff's agent. We held that in view of this clause, the defendant had no right to rely on the oral representations and, therefore, could not establish the essential elements required to show fraud as a defense to the contract.

However, the *Haagen* case is not authority in a case involving a criminal charge for obtaining money by false pretenses. To maintain such a charge, it is not essential that the state prove the victim had a "right to rely" upon the false representation. It is only necessary to prove that the victim actually relied upon it. The early case of *State v. Knowlton,* 11 Wash. 512, 39 Pac. 966 (1895) recognized the distinction between criminal law and civil law with regard to showing fraud:

"Counsel contends that a pretense, though false and made for the purpose of defrauding, which would not have misled the person to whom made, had he exercised 'ordinary prudence and caution,' is not sufficient, and cites many authorities in support of the proposition. We think, however, that the better rule permits the jury to consider, from the facts

and circumstances of a given case, what was the effect of the false representations upon the mind of the person defrauded, and what was the result. Did he rely upon the false pretenses and was he defrauded thereby?

" 'Whether the prosecutor "had the means of detection at hand," or whether "the pretenses were of such a character as to impose upon him," are questions of fact, to be left to the jury, as they must necessarily vary with the particular case. . . . The statute assumes some defect in caution, for if there were perfect caution no false pretenses could take effect.' Wharton, Crim. Law, (9th ed.) § 1188.

"The pretense 'need not be such an artificial device as will impose on a man of ordinary caution, . . . and need not be calculated to deceive a person of ordinary prudence and caution. . . . It is impossible to estimate a false pretense otherwise than by its effect. . . . A court cannot, with due regard to the facts of human life direct a jury to weigh a pretense, an argument, an inducement to action, *in any other scale than that of its effect.*' 2 Bish. Crim. Law (8th ed.) §§ 434, 436.

" 'If the false pretenses were made with the design of deceiving, and thereby obtaining credit or property, and had that effect, the guilty party cannot escape on the ground of the weak credulity of his victim.' *State v. Fooks,* 65 Iowa, 196 (21 N. W. 561)."

We hold that although a "merger clause" may bar one from asserting false oral representations in an action upon a written contract entered into at arm's length, it does not prevent the state from enforcing a criminal statute enacted for the public's protection.

■ The defendant contends the conviction on count IV in the information should be reversed because the evidence shows that the complaining witness did not actually rely upon the representation of an exclusive franchise, but instead, made an investigation of his own. The record shows that the complaining witness in question had checked into the business status of the Allied Service Company and the reputation of its president. He was not satisfied with the results of his investigation and before he would enter into a contract, he required that the defendant procure signatures on the contract of certain members of the corporation.

However, this witness also testified at the trial that he would not have paid the money to the defendant but for the defendant's representation as to an exclusive franchise. It is well settled that the victim of fraud need not have relied solely upon the false representation in parting with his money, but only that he relied materially upon it. *State v. Peterson,* 190 Wash. 668, 70 P. (2d) 306 (1937). This contention is, therefore, without merit.

The defendant next assigns error to the admission of certain rebuttal testimony by a state's expert witness. The defendant testified about statements he made to the complaining witnesses proclaiming the profitability of the cigar vending machines and that there were approximately 200 profitable locations around the Spokane area. He further testified the complaining witnesses were told this was merely a guess. Previously, the complaining witnesses also had testified that the defendant had made the statements relating to the profit prospects.

Although the defendant made one or two references to these statements on his direct examination, most of this testimony was elicited on cross-examination by the state. Immediately thereafter, as a rebuttal witness, the state produced an expert on vending machines in the Spokane area, who testified that cigar vending machines were not of any business value in the area and that there were no more than five locations which might be profitable.

■ The defendant, by his assignment of error, in substance contends that this constituted impeachment of the defendant's testimony upon a collateral matter in that this rebuttal testimony improperly showed prior misconduct on matters not charged against him in the information. A similar contention was raised by the defendant in the case of *State v. Sedam,* 46 Wn. (2d) 725, 284 P. (2d) 292 (1955), where we said:

"This contention, in our opinion, is untenable; first, for the reason that, in establishing an intent to defraud, this court permits a wide latitude of proof. Any evidence which would tend to establish an intent to defraud is relevant. *State v. Jeane,* 35 Wn. (2d) 423, 427, 213 P. (2d) 633 (1950).

These statements were part of the scheme or trick which ultimately resulted in the transactions alleged in the three counts in the information. The statements were, therefore, relevant."

In the instant case an essential element of the crime charged against the defendant was intent to defraud. It was, therefore, proper for the state to introduce evidence to show the falsity of statements concerning the profitability of vending machines in the Spokane area under the theory that this was part of the scheme or plan which ultimately resulted in the false representations as to the exclusive franchise which induced the complaining witnesses to part with their money.

The defendant also argues that this was improper rebuttal testimony and that the name of the rebuttal witness was not endorsed on the list of state's witnesses as required by RCW 10.37.030. No request was made for a continuance or an opportunity to answer the new matter raised by the testimony of the rebuttal witness. Neither was the failure of the state to endorse this witness on its list of witnesses brought to the court's attention. The defendant, therefore, cannot avail himself of this claimed error. *State v. Willis*, 37 Wn. (2d) 274, 223 P. (2d) 453 (1950).

The defendant has assigned error to the trial court's failure to give a limiting instruction with regard to the testimony of one C. D. Ashley, a state's witness, who testified that he also was offered an exclusive franchise for Spokane by the defendant. This testimony was properly admissible to show the fraudulent intent or scheme of the defendant. Upon a proper request, one is entitled to a cautionary instruction explaining the manner in which the evidence should be considered by the jury. *State v. Goebel*, 36 Wn. (2d) 367, 218 P. (2d) 300 (1950). However, an examination of the record reveals that the defendant did not propose an instruction to this effect and the only exception taken was to an instruction given by the court for its failure to include the limitation about which absence the defendant

now complains. In *State v. Goldstein,* 58 Wn. (2d) 155, 361 P. (2d) 639 (1961), we stated:

"Nondirection, that is, failure to instruct in the absence of a request, is not error. *State v. Pavelich,* 153 Wash. 379, 279 Pac. 1102; *State v. Ross,* 85 Wash. 218, 147 Pac. 1149. In *State v. Myers,* 53 Wn. (2d) 446, 334 P. (2d) 536, it was held:

" 'The third assignment of error is that "The Court erred in giving manifestly inadequate instructions in connection with the included offense of manslaughter." . . .

" 'Misdirection may be error, but nondirection, in the absence of a request, is never error. Counsel forthrightly concedes that no instruction upon this subject was requested. Consequently, the assignment of error presents nothing for this court to review.' "

In view of the reasons herein stated, the judgment and sentence is affirmed.

FINLEY, C. J., HILL, OTT, and HAMILTON, JJ., concur.

\*Reported in 370 P. (2d) 867.