[No. 37537. Department Two. December 3, 1964.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL SWARTOS, *Appellant*.*

*Reported in 396 P. (2d) 971.

*William B. Holst* (of *Tonkoff, Holst & Hanson*), for appellant.

*Harry A. Follman* (*James M. Ballard,* of counsel), for respondent.

WEAVER, J.—Defendant, Michael Swartos, appeals from his conviction of second degree murder for the shotgun slaying of his wife's former husband, Kenneth McCormick.

There is evidence which, if believed, supports the conclusion that decedent was a man of violent nature who had been harassing his former wife since their divorce 2½ years prior to decedent's demise. He had been granted visitation privileges between 3 and 4:30 p.m. on Sunday afternoons to see his two sons, whose custody had been awarded to the present Mrs. Swartos.

Sunday, October 27, 1963, about 4:30 p.m., decedent and his new wife drove to Mrs. Swartos's rental property, which defendant and Mrs. Swartos were renovating. Decedent alighted from the car and walked briskly toward the house. His wife remained in the car.

A fight ensued between decedent on one side, and defendant and Mrs. Swartos on the other. The details of the fight are in conflict. Defendant took the stand and testified:

"It was between me and him and all of a sudden I went down, and he came at me and I went down and when I got up again I was stunned or blacked out, I don't know how long it was or anything. When I got up again I looked out the door and she [Mrs. Swartos] was in the yard and he [decedent] had his arm around her shoulder."

Neighbors testified that after the fight had proceeded several minutes, they saw decedent forcibly holding Mrs. Swartos (who was 3 months pregnant) as he backed toward his car. Wielding a shotgun, defendant ordered decedent

from the property. Decedent released Mrs. Swartos and returned to his car. Defendant was standing 6 to 8 feet from the driver's side of the car.

On direct examination defendant testified:

"I walked along the car ten or twelve feet [as decedent backed the car out of the driveway] hoping he [decedent] would leave so I could get some attention for the wife, and he said something to the woman in the car and she scooted over in the other corner, and he reached down in the seat real fast, and *that's when I shot.*" (Italics ours.)

On cross-examination, defendant testified as follows:

"Q. How did you get the gun fired? A. *Pulled back the hammer.*" (Italics ours.)

At the trial, defendant relied on self-defense to justify the homicide. In his opening statement to the jury, defense counsel said:

"*This defendant doesn't deny that he killed Mr. McCormick. He doesn't deny he shot the gun and that this shot took effect and caused the death of Mr. McCormick.* He does deny there was any premeditation, any premeditated plan to take this man's life. He does deny when he shot he intended to kill this man. He does not claim insanity or disclaim responsibility of this thing, or along any such lines. He does make two simple, clear-cut statements, that is, this act was done by him in self defense, defense of himself and others, and that he did it in good faith believing that he had to do it in order to prevent further harm to Mrs. Swartos and his family." (Italics ours.)

Defendant did not object to his counsel's formal opening statement to the jury but, in fact, subsequently fortified it by his own testimony.

Appellate counsel, who did not try the case in superior court, makes three assignments of error, the first of which is a three-pronged attack on instruction No. 14:

"You are instructed that under the law of this State, *where the killing of a human being is admitted by the defendant, as has been done in this case, such killing is presumed to constitute the crime of murder in the second degree.* The burden is upon the State to prove beyond a reasonable doubt that the killing constitutes murder in the first degree, and the burden is upon the defendant to prove

that such killing constitutes manslaughter. But, if you find that the defendant acted in self-defense in shooting the deceased, such fact is not to be used by you to reduce the grade of the offense charged, or to be considered in mitigation of the crime charged.

"Self-defense, if proved, constitutes a complete justification, and entitles the defendant to a complete acquittal."

It is urged that the italicized portion of the instruction (a) is a comment on the evidence in contravention of Art. 4, § 16 of the state constitution; (b) destroys the presumption of innocence to which the defendant is entitled until his guilt has been proved beyond a reasonable doubt; and (c) shifts the burden of proof to the defendant.

Instructions must be considered together as a whole and if, when so considered, they properly state the law, they are sufficient. *State v. Refsnes,* 14 Wn. (2d) 569, 128 P. (2d) 773 (1942); *State v. Thomas,* 63 Wn. (2d) 59, 385 P. (2d) 532 (1963).

The only instruction to which error is assigned is instruction No. 14. In other instructions the jury was told: that defendant's plea of "not guilty" placed in issue every material allegation contained in the information; that the law raised no presumption against defendant, *but every presumption of the law was in favor of his innocence*; that every material fact necessary to constitute the crime must be proved *beyond a reasonable doubt, including a finding that defendant shot decedent with a shotgun and that the wound thus inflicted resulted in his death.*

Defendant's theory of justifiable homicide, committed in his own lawful defense or in the lawful defense of his wife, was placed squarely before the jury, and the jury was instructed that if it found the homicide justifiable defendant could not be convicted of murder or manslaughter. The jury was instructed that defendant need not prove self-defense beyond a reasonable doubt nor by a preponderance of the evidence; the defendant sustains this burden "if from a consideration of all of the evidence in the case, you have a reasonable doubt as to whether the killing was done in self-defense. . . ." Finally, the usual cautionary instruction was given that the court is prohibited from com-

menting upon the facts and "if it has seemed to you that
. . . in the giving of these instructions the court has said
or done anything that would appear to be commenting upon
the facts . . . it is your duty to entirely disregard the
same and determine the facts solely from the evidence that
has been admitted in the case."

■ The general format of instruction No. 14 has been
approved by this court in a line of decisions commencing
with *State v. Payne*, 10 Wash. 545, 39 Pac. 157 (1895), and
recently discussed with approval in *State v. Thomas*, 63
Wn. (2d) 59, 385 P. (2d) 532 (1963). Usually, however, the
instruction reads:

". . . where the killing of a human being is proved
beyond a reasonable doubt, such killing is presumed to con-
stitute the crime of murder in the second degree."

It would have been reversible error had the trial court
failed to instruct upon the presumption of innocence or
failed to instruct that the state must prove every material
fact beyond a reasonable doubt including a finding that
defendant shot decedent with a shotgun and that the
wound thus inflicted resulted in his death. *State v. Tyree*,
143 Wash. 313, 255 Pac. 382 (1927). With painstaking and
meticulous care, however, the jury was so instructed. The
trial court could not, and did not, rely entirely upon the
admissions made in open court by defendant and his coun-
sel, quoted *supra*.

In *Tyree* defendant claimed the shooting was done in
defense of his person. The court did not instruct upon the
presumption of innocence but did instruct that the killing
was presumed to be murder in the second degree.

This court said:

". . . The two presumptions are not necessarily an-
tagonistic, for the defendant is presumed innocent until his
guilt has been proven beyond a reasonable doubt, and,
*although the killing may be admitted,* the presumption
which then arises is as to the degree of the crime of which
he is guilty, and is not proof beyond a reasonable doubt that
the defendant is guilty of any crime. Throughout the trial,
until his guilt has been established beyond a reasonable
doubt, he is presumed to be not guilty of any crime; but

*the killing having been admitted, the presumption then is that the crime, if any, of which he is guilty, is that of murder in the second degree."* (Italics ours.) *State v. Tyree,* 143 Wash. 313, 315, 255 Pac. 382 (1927).

In *State v. Martin,* 176 Wash. 637, 30 P. (2d) 660 (1934), the defendant testified that he shot two men. This court affirmed the conviction, saying:

"In a long line of cases, from *State v. Payne,* 10 Wash. 545, 39 Pac. 157, to *State v. Turpin,* 158 Wash. 103, 290 Pac. 824, this court has held that, where the killing of a human being is *admitted,* the killing is presumed to constitute the crime of murder in the second degree. . . ." (p. 639) (Italics ours.)

The same rule of law has been repeated in other decisions of this court. *State v. Gallagher,* 4 Wn. (2d) 437, 103 P. (2d) 1100 (1940); *State v. Davis,* 6 Wn. (2d) 696, 108 P. (2d) 641 (1940); *State v. Sill,* 47 Wn. (2d) 647, 289 P. (2d) 720 (1955); *State v. Hawkins,* 89 Wash. 449, 154 Pac. 827 (1916).

We believe that the portion of the italicized part of instruction No. 14 "as has been done in this case" is inept, and we do not approve it. We do not deem it, however, in the circumstances of this case, a comment on the evidence. It is a legitimate reference to the formal opening statement of defense counsel that "He doesn't deny he shot the gun and that this shot took effect and caused the death of Mr. McCormick." The instruction does not indicate the belief or disbelief by the trial judge of a disputed fact; nor does it destroy the instruction of the presumption of innocence which was given exactly as proposed by defendant's trial counsel. Recently, in *State v. Thomas,* 63 Wn. (2d) 59, 385 P. (2d) 532 (1963), we held that an instruction similar to instruction 14 does not shift the burden of proof to defendant.

While Mrs. Swartos was testifying as the first witness for the defense, trial counsel offered in evidence exhibit No. 7, which was a certified copy of the findings of fact, conclusions of law and decree entered in her divorce from decedent several years prior. The findings disclose that

decedent had physically abused Mrs. Swartos. Defense counsel's theory in offering the exhibit was that

"The materiality of the Findings were known to Mr. Swartos [defendant], and if your Honor would examine the Findings you would see that they, the findings, might well give him a cause for fearing this man. This is one of the background facts and circumstances in his mind."

The trial court admitted the exhibit upon defendant's proffered theory ". . . for the limited purpose of the effect such knowledge would have upon the mental process or mental status of the defendant." The trial court stated:

". . . I am not going to permit the jury to have the findings until the defendant has completed the proof which he has stated he will complete, that is, showing that these findings did come to the knowledge and attention of the defendant prior to the homicide."

Subsequently, defendant testified that he was familiar with the contents of exhibit 7.

It was the prosecution, not the defense, that excepted to the court's ruling.

By instruction No. 20, the court instructed that should the jury find that decedent had threatened defendant or his wife and children on prior occasions "*and that defendant had knowledge of such threats,*" such conduct might be considered by the jury only as the occasions related to *defendant's* state of mind and only as the occasions related to the issue of justifiable homicide. Although instruction No. 20 does not refer to exhibit 7, its rationale is the same as was applied by the trial court when it admitted exhibit 7 for the limited purpose indicated. No exception was taken to instruction No. 20 and it became the law of the case.

■ In argument upon motion for a new trial, appellate counsel, for the first time, urges that exhibit 7 was also admissible to show the *state of mind of the decedent,* presumably at the time of the shooting. We do not agree. Exhibit 7, signed more than 2½ years prior to the shooting, had no probative value on decedent's state of mind at the time of the shooting.

Finally, defendant assigns error to the court's exclusion of two small colored photographs of Mrs. Swartos taken over a week after she had been manhandled by decedent on the day of the shooting. They disclose a black eye.

Admission in evidence of photographs is within the sound discretion of the trial court. That discretion was not abused for the record discloses that the trial court did not limit the witness's oral testimony as to the extent of the injuries to Mrs. Swartos.

The judgment is affirmed.

OTT, C. J., DONWORTH and HAMILTON, JJ., and JOHNSON, J. Pro Tem., concur.