[No. 39578.   Department Two.   September 19, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. PETER GEORGE McDONALD, *Appellant.**

*James A. Alfieri* and *Richard G. Martinez,* for appellant.

*Charles O. Carroll* and *Edmund P. Allen,* for respondent.

*Reported in 445 P.2d 345.

HILL, J.—This is an appeal by Peter George McDonald from a conviction of a gross misdemeanor under RCW 9.19.050—MAKING OR HAVING BURGLAR TOOLS.[1] His codefendant, Eugene Edward Woods, was also convicted but did not appeal. This was a nonjury case.

The nature of the questions raised on this appeal requires a detailed consideration of the circumstances surrounding the arrest. At approximately 4:50 a.m., December 17, 1966, a Seattle police officer, on solo car patrol, observed a vehicle double parked with its lights on, facing westbound on North 45th. The officer was proceeding east on the same street. As the police car approached, the other vehicle started forward slowly. The plainly marked police car slowed as the two came about abreast; the driver and passenger in the other car looked directly at the police car and the officer as he began a slow U-turn to check on the other vehicle. It immediately sped away, running a stop sign at North 45th and Phinney, turning south on Phinney, and then ending on the curb in an attempt to make a high-speed turn east on North 44th. The officer "blocked-in" the other vehicle by stopping the police car behind it. The officer alighted and with drawn pistol approached the other vehicle, ordering the occupants to throw out their car keys. When the officer looked in the back seat to check for other occupants, he saw "several pry bars laying on the floor, a 2-cell Ever Ready flashlight, an 8 inch shank yellow-handled screwdriver, one 2-foot wrecking bar, one 2-foot pry bar, and a 21-foot length of ¾″ manila rope." He testi-

---

[1]"Making or having burglar tools. Every person who shall make or mend or cause to be made or mended, or have in his possession in the day or nighttime, any engine, machine, tool, false key, pick lock, bit, nippers or implement adapted, designed or commonly used for the commission of burglary, larceny, or other crime, under circumstances evincing an intent to use or employ, or allow the same to be used or employed in the commission of a crime, or knowing that the same is intended to be so used, shall be guilty of a gross misdemeanor. The possession thereof except by a mechanic, artificer or tradesman at and in his established shop or place of business, open to public view, shall be prima facie evidence that such possession was had with intent to use or employ or allow the same to be used or employed in the commission of a crime." RCW 9.19.050.

fied that the Mercury-vapor street lights made it "easy to see" the interior of the car. The officer then radioed for assistance. Another officer arrived within a very short time. He testified that a rope and a number of pry bars were in plain view in the car on the curb.

Contemporaneously with the arrest of the occupants of the car (McDonald and Woods), the officers searched them and it. Under the right front seat (which the appellant had occupied), they found two fully loaded pistols: one, a .38 air weight snub nose, fully loaded; the other, a .380 Berretta, fully loaded, with "one in the chamber, ready to go, cocked." A switchblade knife was found concealed upon the person of the driver (Woods). The search revealed further significant items.[2]

The appellant makes 12 assignments of error. His brief makes a general argument with no attempt to designate the specific assignment of error which is being discussed. Our analysis of this blanket coverage indicates that three assignments of error (i.e., 6, 7 and 8) were not argued,[3] and that the other nine can be divided into three distinct groupings, presenting the following contentions:

1. That the complaint was based on a statute violative of the Due Process Clause of the United States Constitution in that it is so vague as to afford no reasonable notice of what action is proscribed therein (Assignment of Error 1).

2. That the court erred in refusing to grant appellant's motion to suppress all evidence obtained pursuant to a search that, though incident to a lawful arrest, was unrea-

---

[2] On the floor in the back seat area, partially covered with a man's coat, the officers found a brown leather case which contained a pair of 12-inch bolt cutters, an 8 or 10-pound mall, a 12-inch punch, an 11-inch wedge, and a 6-inch wedge. In the trunk the officers found: four pairs of gloves, two flashlights, two 6½-inch chisels, two wrecking bars, a pair of metal cutters, a pry bar, a pair of electrician's wires, and a roll of braided nylon cord and a plastic bag containing a pair of pliers and assorted punches.

[3] Assignments of error not supported by argument in appellant's brief need not be considered by this court. *In re Estes v. Hopp,* 73 Wn.2d 263, 268, 438 P.2d 205 (1968); *Seattle v. Shaffer,* 71 Wn.2d 600, 430 P.2d 183 (1967); *State v. Bell,* 59 Wn.2d 338, 368 P.2d 177 (1962).

sonable in scope, and therefore invalid (Assignments of Error 2, 3, 4 and 5).

3. That the court erred in refusing to grant appellant's motion to dismiss on the insufficiency of the evidence (Assignments of Error 9, 10, 11 and 12).

■ Appellant urges that RCW 9.19.050, "MAKING OR HAVING BURGLAR TOOLS," is unconstitutional as being unreasonably vague and indefinite (see footnote 1, *supra*). This statute has been the law of this state in essence since 1893[4] and in its present form since 1909[5]. Arguments made by the appellant on the issue of constitutionality were answered by this court in *State v. Fitzpatrick*, 141 Wash. 638, 251 Pac. 875 (1927), and several times since. The constitutionality, construction and application of similar statutes in other states is discussed at length in an annotation in 103 A.L.R. 1313-1325. One of the more recent decisions dealing with the constitutionality of such statutes is *State v. Hart*, 200 Kan. 153, 434 P.2d 999 (1967), in which the Kansas court said:

> The conduct forbidden by K.S.A. 21-2437 is the possession (or making, mending, etc.) of tools or devices suitable for and commonly used in unlawful breaking and entering, *with intent to use those tools for that unlawful purpose*. We think even the most stupid member of the house breaking cult would understand that such undesirable conduct falls within the prohibition of the statute. In *State v. Hill*, 189 Kan. 403, 411, 369 P.2d 365, 91 A.L.R.2d 750, we defined the test to be applied, in these words:
> " . . . The test is whether the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice." (Citing cases.)

We quote another paragraph from the same opinion which seems to be particularly appropriate to the instant case:

> The defendant calls attention to the general rule that penal statutes must set up ascertainable standards and, where a statute either requires or forbids the doing of an

[4]Chapter 90, Laws of 1893.

[5]Section 330, chapter 249, Laws of 1909.

act in terms so vague and ambiguous that men of ordinary understanding or common intelligence can only guess at its meaning and differ as to its application, it lacks the first essential of due process. (21 Am. Jur.2d, Criminal Law, § 17, p. 99.) We are in accord with this principle, but fail to see its application here.

We also are in accord with that principle, but, like the Kansas court, we fail to see its application here. Appellant's challenge to the constitutionality of RCW 9.19.050 is fully answered by our own decisions going back to the *Fitzpatrick* case in 1927, and by the 1967 Kansas case, which we have just quoted.

Appellant next argues that the tools, guns, et cetera, taken from the car in which he was riding, were inadmissible, as the fruits of an unreasonable, and therefore invalid, search.

■ At the outset of any consideration of the argument relative to the propriety of the search it must be emphasized that this is not the case of a motorist being stopped for a minor traffic violation and a search then being made of his person and car. There had been a serious misdemeanor committed in view of the officers, a desperate effort made to flee and avoid arrest; there were, in plain view of the officer before any search was made, tools which were customarily used by burglars, and it was at an hour when normally honest artisans and artificers are not abroad. The trial judge himself gave the apt answer to this assignment of error when he ruled on the admissibility of the articles found in the car:

THE COURT: Motion to suppress is denied. If this Officer had done anything other than what he did, we would want him fired from the Police force. He did the only thing a reasonable man could do. He observed an automobile on the street and made a u-turn, not to molest the parties at all, but to see what the situation was, why they were there double-parked with their lights on. There is no indication that he would have done anything further had this car gone about its business. He may have. He may not.

The car then obviously started to run from a police car

and committed a serious traffic violation in doing so. An officer can't stand by when that happens. He does the only thing he reasonably can do. They violated a traffic law in a very serious manner, going through a stop sign, and they are trying to run from the police. He blocks the car, pulls a gun to protect himself and looks in the car to protect himself. Seeing what happens to be there to be seen while a lawful arrest is in progress is not a search, and he can act on the basis of what he lawfully and properly sees. He did so. These men were under arrest. He saw evidence then of a further offense that was right there in his presence. He called for further assistance.

I see no conceivable basis for suppressing this evidence.

The third contention covered by the assignments relates to the insufficiency of the evidence to sustain the conviction, and is so patently without substance as not to merit discussion, except as to one issue never presented to the trial court. It is argued here for the first time that, though the evidence may have been sufficient to convict his codefendant, the owner and driver of the car, since it must be assumed that the guns and burglar tools found in his car belonged to him; it therefore follows that appellant must be assumed to have been merely an innocent passenger going along for an early morning ride. The case was tried from start to finish on the theory of joint possession of the tools and guns. Neither defendant testified; neither defendant acknowledged ownership of the guns or the tools, though Woods had told an officer that he owned the car. A search of the record reveals not the slightest evidence that they were claimed to be in the exclusive possession or control of either defendant. No motion for dismissal was ever made in behalf of McDonald on the basis that the evidence was insufficient to prove that he, as an individual, had possession of the guns and tools found in the car. The trial court made a specific finding "That the defendants, Eugene Edward Woods and Peter George McDonald, possessed the tools under circumstances evincing an intent to use or employ or allow the same to be used or employed in the commission of a crime."

Error is assigned to the making of this finding, but there can be no question that the above is a finding which any trier of the facts—jury or judge—was entitled to make on the evidence presented and the position taken by the defendants at the time of trial.

There seem to be two complete answers to the contention now made that there was no evidence to establish individual possession by McDonald.

First, this court should not consider the contention because it was never presented to the trial court. The defense theory at trial bore almost exclusively on the proposition that there was insufficient evidence to prove the necessary element of intent; *i.e.*, the intent to use or employ the tools found in the commission of a crime. Our rule, often repeated, is that issues not raised at the trial level cannot for the first time be raised on appeal. A case cannot be tried on one theory, and appealed on another. The following quotation from *State v. Reano*, 67 Wn.2d 768, 771, 409 P.2d 853 (1966), states the rule and the reason for it:

> This court will not review a case on a theory different from that on which it was presented at the trial level. Questions not raised in that court will not be considered on appeal. *Ledgering v. State*, 63 Wn.2d 94, 385 P.2d 522 (1963); *Wetherbee v. Gary*, 62 Wn.2d 123, 381 P.2d 237 (1963); *National Indem. Co. v. Smith-Gandy, Inc.*, 50 Wn.2d 124, 309 P.2d 742 (1957); *Capper v. Callahan*, 39 Wn.2d 882, 239 P.2d 541 (1952); *In re Farmers & Merchants State Bank of Nooksack*, 175 Wash. 78, 26 P.2d 631 (1933). The reason for the rule is that, if a party desires to rely upon some theory other than that upon which the case was tried, he must present it to the trial court so that a ruling thereon may be made and, if such ruling be adverse, he may have an opportunity to elect to stand on his theory or apply to the court to amend his theory and present some other one.

See, also, *State v. Bullock*, 71 Wn.2d 886, 431 P.2d 195 (1967); *State v. Garrison*, 71 Wn.2d 312, 427 P.2d 1012 (1967); *State v. Mudge*, 69 Wn.2d 861, 420 P.2d 863 (1966).

We have recognized that there can be exceptions to that rule, particularly in criminal cases, where the right to a

fair and impartial trial or the preservation of some other fundamental right is involved. Such a case was *State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968).

This was not the exceptional case; the appellant had a fair and impartial trial on the theory presented that there was no intent to use the tools in evidence in the commission of a crime. The appellant now desires to wage his appeal on a different theory. The general rule, as stated, applies to this case.

■ Second, if considered, the contention is not valid. All that the appellant is saying is that if this case had been presented differently the finder of the facts *might* have drawn a different inference from the evidence presented. Possession, for the purpose of this criminal statute, does not turn on a matter of ownership. Even if there had been evidence (which there wasn't) that the tools and guns belonged to the codefendant Woods—the finder of the facts— judge or jury—was entitled to find from the evidence presented that the tools and guns were in their joint possession for a joint criminal purpose within the purview of RCW 9.19.050.

The issue relative to what constitutes "possession" has been raised and disposed of many times; and usually contrary to the contention of the appellant.

The Supreme Court of Connecticut recently answered the same contention in these words:

> The state was not required to prove that the defendant himself had actual physical possession of any or all of the articles. If it was established that any of the three had dominion and control over the articles and if all three were acting, at the time, pursuant to a common purpose, then all would have possession of the articles. State v. Ferrone, 97 Conn. 258, 262, 116 A. 336. (*State v. Gonski*, 155 Conn. 463, 232 A.2d 483 (1967).)

The Connecticut court had 45 years earlier discussed the same question in *State v. Ferrone*, 97 Conn. 258, 261-62, 116 Atl. 336 (1922), cited in the foregoing quotation, saying:

> The court further instructed the jury that "possession,"

as used in the statute, meant having an article or instrument "under one's control and dominion," and that this might be "that of the individual, or it may be a joint possession of several"; so here, "it might be that you could find that they were in the possession of the entire group of men, because at that time they were animated by a common purpose."

Even the "girl friend" riding in the car can have possession of burglar tools within the purview of the statute. In *Johnson v. State*, 246 Miss. 182, 187-188, 145 So.2d 156 (1962), the court affirmed a conviction on that charge, holding that the jury was warranted in finding that the defendant Johnson was in constructive possession of the burglar's tools in the car in which she was riding with two male companions. The court said:

> As to the character of possession, it may be actual or constructive. The State need not prove an actual possession, or that the tools were taken from the person of defendant. Possession may be joint or individual, and two or more may be in possession of burglar tools where they have the joint power of control and an inferable intent to control jointly. Commonwealth v. Segers, 167 Pa. Super. 642, 76 A. 2d 483 (1950); State v. McHenry, 207 Iowa 760, 223 N. W. 535 (1929); 12 C. J. S., Burglary, p. 754. Two persons may have constructive possession, or one may have actual possession and the other constructive possession. Anno., 103 A. L. R. 1314 (1936); 9 Am. Jur., Burglary, Sec. 86. Constructive possession may be shown by circumstantial evidence, and the jury may weigh the surrounding circumstances. Phillips v. State, 154 Neb. 790, 49 N. W. 2d 698 (1951); State v. Salernitano, 27 N. J. Super. 537, 99 A. 2d 820 (1953); Missouri v. Hefflin, 338 Mo. 236, 89 S. W. 2d 938, 103 A. L. R. 1301 (1935).

The Supreme Court of Kansas, in the case of *State v. Hart, supra,* also had to do with the subject of what constitutes possession and said:

> If it be objected that the cutting tool was in the possession of Jerrel, not Hart, and was thus inadmissible against Hart, we would answer that we understand the law to be that, for the purpose of this statute, possession of burglary equipment may be joint as well as individual, and that two or more persons may have the power of

control over burglary tools and intend to control and use them jointly, so that all become criminally liable. (12 C. J. S., Burglary, § 69, p. 754.) Nor is ownership of the proscribed instruments a requisite of the offense; possession or power of control is the criterion. (12 C. J. S., supra, p. 755.)

(This is quoted with approval in *State v. Jerrel,* 200 Kan. 415, 436 P.2d 973 (1968).)

Having fully answered the three contentions which the appellant has made (the last of which we should not have considered), we affirm the conviction.

ROSELLINI, HAMILTON, and NEILL, JJ., and WIEHL, J. Pro Tem., concur.