[No. 43862.   En Banc.   January 7, 1977.]

THE STATE OF WASHINGTON, *Petitioner*, v. BETTY
JOYCE McHENRY, *Respondent*.

*Donald F. Herron, Prosecuting Attorney*, and *Joseph D. Mladinov, Special Counsel*, for petitioner.

*Michael D. Smith*, for respondent.

UTTER, J.—Betty Joyce McHenry, respondent herein, was found guilty by a jury of the crime of unlawful possession of a controlled substance as defined in RCW 69.50.401(c). The Court of Appeals reversed that conviction in *State v. McHenry,* 13 Wn. App. 421, 535 P.2d 843 (1975). We affirm the opinion of the Court of Appeals.

Respondent argued to the Court of Appeals that the trial court committed error which deprived her of fundamental constitutional guaranties by (1) failing to adequately inform the jury the burden of proof was upon the State to prove each element of the crime with which she was charged beyond a reasonable doubt, (2) failing to define what reasonable doubt was, and (3) failing to inform the jury she was presumed innocent until proven guilty.

The material facts as set forth in the Court of Appeals opinion, at page 422, are as follows:

> Defendant presented no testimony at trial to dispute the facts adduced by the state's witnesses. It is uncontroverted that officers of the Tacoma Police Department conducted a lawful search of a Tacoma residence pursuant to a warrant. Defendant and several others were found in the house. A codefendant, one James Thompson, was handcuffed after attempting to draw a pistol on one of the officers. Betty McHenry then pushed her way to his side, took a white slip of paper from his hands, and attempted to swallow it. The paper was retrieved from her mouth and was found to contain heroin.

Respondent's trial counsel (not counsel on appeal) did not except to the court's complete failure to instruct on the presumption of innocence or to the court's failure to isolate and define the requirement of proof beyond a reasonable doubt.

The Court of Appeals squarely faced the quandary presented by this case, at page 426.

It would be possible for us to conclude that the case against Betty McHenry is so unequivocal that a reversal will merely delay the inevitability of an errorless conviction. However, we believe that it would be a greater miscarriage of justice for us to fail to require jury instructions necessary to minimum standards of due process in *all* criminal trials. The constitutional right to a fair trial means no less.

It is regrettable that the State will be put to the expense of another trial. But to the extent that a reversal of this case will highlight the necessity for inclusion of fundamental doctrines in matters pertaining to criminal justice, it will have served a useful purpose.

█ Petitioner argues this court should refuse to consider assignments of error directed against the court's failure to give instructions defining the presumption of innocence, the burden of proof in criminal cases, and reasonable doubt, where no instructions were requested and no exception was taken to the failure to give them. *Seattle v. Love,* 61 Wn.2d 113, 377 P.2d 255 (1962). In *Love,* there was no discussion of the reason for the rule and the court only stated, at page 114, "[i]t is well settled that, in the absence of a request to instruct, the court's failure to do so is not error." *State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966). This rule, however, has been subsequently eroded. *State v. Peterson,* 73 Wn.2d 303, 306, 438 P.2d 183 (1968); *State v. McDonald,* 74 Wn.2d 474, 445 P.2d 345 (1968). There we recognized an appellate court will consider an error raised for the first time when "an instruction invades a constitutional right of the accused (such as the right to a jury trial) . . ." *State v. Peterson, supra* at 306. We have also recently indicated we will consider error amounting to nondirection where the error was not called to the court's attention and it related to constitutional rights raised for the first time on appeal. The error we considered on appeal, to which no request for an instruction was directed to the trial court, concerned the failure to require a unanimous verdict. *State v. Carothers,* 84 Wn.2d 256, 262, 525 P.2d 731 (1974).

■ The failure of the court to state clearly to the jury the definition of reasonable doubt and the concomitant necessity for the State to prove each element of the crime by that standard is far more than a simple procedural error, it is a grievous constitutional failure.

> Lest there remain any doubt about the constitutional stature of the reasonable–doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*In re Winship,* 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). The court in *Winship* proceeded to explain the policy reasons for its insistence upon the constitutional stature of the reasonable doubt standard, at page 363:

> The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law." . . . "a person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case."

As noted in *Winship,* the presumption of innocence is likewise fundamental to a fair trial (*Coffin v. United States,* 156 U.S. 432, 39 L. Ed. 481, 15 S. Ct. 394 (1895)), and has been repeatedly stated to be fundamental by both the legislature and the judiciary. RCW 10.58.020; *State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974).

Although the juror's handbook alluded to the necessity of the prosecution proving its case beyond a reasonable doubt, this cannot seriously be argued to be a substitute for the court's instructions to the jury. In the juror's handbook they are told on pages 10–11, "[t]he meaning of 'reasonable doubt' will be defined in the instructions of the court." This was not done.

The judgment is reversed and the case remanded for new trial.

STAFFORD, C.J., and BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

ROSELLINI, J. (dissenting)—The majority in this case has ordered a new trial which it implicitly, if not explicitly, acknowledges will inevitably result in the second conviction of the petitioner, unless the jury totally disregards the evidence and renders an arbitrary and capricious verdict. It does so for the sole purpose of advising the lower courts that they have a duty to examine proposed instructions to see if they adequately protect all of the constitutional rights of the accused in a criminal case, and if they do not, to formulate their own instructions covering these rights.

There is nothing before the court to show that the superior court judges need this advice. There is nothing to indicate that the kind of oversight which in this case caused the omission of certain instructions, is a frequent occurrence. Judging by the number of cases which have come before this court, involving this type of omission, I would suggest that the situation rarely arises. I see no evidence before the court to justify it in assuming that trial court judges are unaware of their duty to see that the defendant receives a fair trial or that they do not generally conscientiously perform that duty. Here, it is agreed that the omission was inadvertent on everyone's part. I do not see that ordering a useless new trial will prevent an occasional incidence of inadvertent oversight.

While the giving of instructions on its own initiative is not required of the superior court by statute or court rule, I will agree that in a proper case, such action may be required as a part of the court's duty to see that the defendant is afforded a fair trial. This is not such a case.

In determining whether a defendant has been given a fair trial, it is necessary to examine the record in its entirety. This the majority has neglected to do for obvious reasons.

Here, it is apparent upon the whole record that the jury was not misled, and that the prosecutor's burden of proof and the presumption of innocence, which is its corollary, were brought home to it repeatedly throughout the trial proceedings. Anyone familiar with trial practice must be aware that it is the custom of defense attorneys to "grill" the prospective jurors upon their ability to presume the defendant innocent and to require the prosecuting attorney to prove his case beyond a reasonable doubt. The record shows that this practice was adhered to in this case and that the prospective jurors all dutifully proclaimed their ability to understand and apply these principles. When the evidence, which was direct, corroborated and undisputed, was in and counsel argued the case to the jury, these basic principles were again brought to its attention. Not only did defense counsel argue to the best of his ability (though undoubtedly with little hope of success, considering the nature of the evidence) that the prosecutor had failed to meet his burden and that the jury should find that the presumption of innocence had not been overcome, but the prosecutor himself acknowledged his burden of proof. He argued to the jury that this burden had been sustained.

There seems to be no question but that the omission of instructions with respect to the burden of proof and the presumption of innocence was inadvertent. The prosecutor stated before this court that it is his custom to propose such instructions in criminal cases. That practice is commendable. However, I do not agree with the majority that his failure to do so on this occasion, assuming it can justly be inferred that there was such a failure, was a fault equal to that of defense counsel, who evidently failed to request the instructions and also failed to call the court's attention to the fact that they were missing from the charge. I know of no rule of law which places upon the prosecutor the affirmative duty of proposing instructions favorable to the defendant. No authority is cited in support of the proposition stated in the majority opinion that the court, defense counsel, and prosecutor were equally at fault.

Contrary to the assumption of the majority opinion, the rule requiring that error be called to the attention of the trial court, if it is to be relied upon on appeal, is not without its foundation in reason. The rule followed in *Seattle v. Love,* 61 Wn.2d 113, 377 P.2d 255 (1962), is well established. It may be said that it is fundamental to the orderly administration of justice. It was applied in *State v. Goldstein,* 58 Wn.2d 155, 361 P.2d 639 (1961) and *State v. Cooke,* 59 Wn.2d 804, 371 P.2d 39, 94 A.L.R.2d 564 (1962), where it was said that *nondirection,* in the absence of a request, is never error. It was reaffirmed in *State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966), where we observed that the rule has its basis in Rule of Pleading, Practice and Procedure, 101.04W (now embodied and further elaborated and refined in CrR 6.15), requiring that requests and exceptions be made before the instructions are read to the jury. We said of it at page 312:

> We have, with almost monotonous continuity, recognized this procedural requirement and adhered to the proposition that, absent obvious and manifest injustice, we will not review assignments of error based upon the giving or refusal of instructions to which no timely exceptions were taken. We are satisfied that the requirements of this procedural rule are constitutional, and we do not conceive that requiring reasonable adherence to the rule violates due process concepts, especially where it does not appear that an accused is thereby deprived of a fair trial.

(Footnote omitted.)

The principle was again reaffirmed in *State v. Jackson,* 70 Wn.2d 498, 424 P.2d 313 (1967) and *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972).

Also in accord is *State v. Floyd,* 11 Wn. App. 1, 521 P.2d 1187 (1974). The general rule is the same. 24 C.J.S. *Criminal Law* § 1674(b) (1961).

Where the trial court's instructions have had the effect of improperly directing a verdict, we have waived the requirement that exceptions be taken at the proper time in the court below. *State v. Peterson,* 73 Wn.2d 303, 438 P.2d 183

(1968), and *see State v. Warwick,* 105 Wash. 634, 178 P. 977 (1919). Also, where the prosecutor's misconduct is so flagrant that no instruction could cure its prejudicial effect, we have held a request for a curative instruction was unnecessary. *State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956); *State v. Reeder,* 46 Wn.2d 888, 285 P.2d 884 (1955).[1]

It will be seen that all of these cases involved either an affirmative act on the part of the trial court or an occurrence, the prejudicial effect of which could not have been cured by an instruction. My research has revealed no case in which we have reversed the judgment of a trial court where the claimed error was nondirection and the error was not called to the court's attention, except two early cases of *State v. Myers,* 8 Wash. 177, 35 P. 580, 756 (1894), and *Linbeck v. State,* 1 Wash. 336, 25 P. 452 (1890), where it was held that the court had a statutory duty to instruct, whether or not a request was made. The propriety of those holdings was questioned in a dissent written by Scott, J., in *State v. Myers, supra* (a 3–to–2 decision), calling attention to the fact that the statute was enacted for the benefit of the defendant, who should have the right to say whether an instruction should be given calling the jury's attention to his failure to testify. Their uniqueness was noted in *Duteau v. Seattle Elec. Co.,* 45 Wash. 418, 88 P. 755 (1907).[2]

---

[1] There are other extraordinary cases in which it has been held unnecessary to call the error to the trial court's attention. For example, we have held that since the constitution guarantees the right to a public trial, a private trial is void and no objection is necessary. *State v. Marsh,* 126 Wash. 142, 217 P. 705 (1923).

[2] In both *State v. Myers,* 8 Wash. 177, 35 P. 580, 756 (1894) and *Linbeck v. State,* 1 Wash. 336, 25 P. 452 (1890), a divided court held that a statute required the court to give an instruction to the effect that a defendant's failure to take the stand was not grounds for an inference of guilt, even though no instruction was requested. It appears that the holding of those cases did not prove to be as beneficent as expected, since this court has itself abrogated the statute imposing the duty on the trial court, in CrR 6.16(b). I would suspect that defense counsel have not always found it in their clients' interests to have the instruction given, calling attention as it does to their failure to take the stand.

Insofar as I have been able to ascertain, this court has never again held that a statute or the constitution places upon the court the duty to give an instruction where there has been no request for it. The respondent cites the case of *State v. Tyree,* 143 Wash. 313, 255 P. 382 (1927). It was there held that an accused is entitled to an instruction on the presumption of innocence even though it is established that he killed the victim, thus raising a presumption of murder in the second degree. The opinion disposes of a number of errors assigned to the giving and refusing of instructions, without any reference to the question whether the error was brought to the trial court's attention. It would appear, therefore, that it was conceded in *Tyree* that proper exceptions were taken; and an examination of the briefs filed in the case confirms that no issue was made regarding the preservation of the alleged errors.

This court has also said in recent cases that the jury must be instructed that in order to convict it must be convinced of the defendant's guilt beyond a reasonable doubt (*State v. Higgins,* 67 Wn.2d 147, 406 P.2d 784 (1965)), and that the failure to instruct upon the presumption of innocence or the burden of proof would be reversible error (*State v. Swartos,* 65 Wn.2d 335, 396 P.2d 971 (1964)). But in neither of these cases did we say that there would be no necessity of preserving the error.

I see no reason to depart from the general rule in this case. The elements of the alleged crime, as contained in an instruction, the correctness of which, insofar as it defined the crime, is not challenged, were that (1) in Pierce County (2) the respondent unlawfully possessed a controlled substance (3) which was heroin. The State's direct and corroborated evidence upon all of these elements was undisputed. It can be said, then, as a matter of law, that the guilt of the respondent was proved beyond a reasonable doubt.

Where the evidence is in dispute, the giving of instructions upon matters as fundamental as the presumption of innocence and burden of proof may well be essential to the enjoyment of the right of trial by jury. In such a case, a

further exception to the rule requiring that errors be called to the attention of the trial court would be indicated.

While there is no express constitutional provision establishing the presumption of innocence or requiring that guilt be proven beyond a reasonable doubt, these common–law concepts are now embodied in a statute of the state (RCW 10.58.020) and undoubtedly are components of due process of law. The United States Supreme Court has held in *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), relied upon in the majority opinion, that they are necessary to a fair trial. But because due process and the statute require that *proof .be made* beyond a reasonable doubt, it does not follow that due process is denied or the statute is violated in every case in which the court fails to present this concept in formal instructions, and no authority cited in the majority opinion stands for such a proposition.

The requirement is that the accused be presumed innocent and his guilt be proved in the degree stated.

It may be conceded, as I have said, that in a case where the evidence is inconclusive or in dispute, the instructing of the jury upon the presumption of innocence and the burden of proof may be essential to a fair trial. But if the evidence is so overwhelming that the court can say as a matter of law, as is the case here, that the State's burden has been sustained—that no reasonable jury could find to the contrary—the requirements of the statute and of due process have been met. Proof has been made beyond a reasonable doubt.

Unlike the majority, the Court of Appeals recognized that a new trial could not properly be ordered unless prejudice was shown. The Court of Appeals tacitly admitted that it could find no reasonable basis upon which to doubt the State's evidence, but nevertheless deemed itself obliged to assume that the jury might have viewed the evidence in a different light. Understandably, the court did not suggest an approach which a reasonable jury might take which would justify it in concluding that the State had failed to

·prove its case. The fact is that the evidence is so conclusive that even the respondent does not suggest a basis upon which the jury could have doubted the proof, and the majority offers none. Under such circumstances, the ordering of a new trial exalts form over substance. When we consider the heavy demands made on superior court time, and particularly the clogged criminal calendars, it is irresponsible, in my view, to order a new trial in a case such as this. Even though the omission had been called to the attention of the trial court, and, incredibly, the error was not corrected, this would not be a proper case for reversal.

Viewing the trial as a whole, it is impossible to conceive that the jury went to the jury room laboring under any misconception regarding the presumption of innocence and the prosecutor's burden of proof. Further, there can be no reasonable surmise that upon a second trial, a different verdict will be rendered.

I would reverse the decision of the Court of Appeals and reinstate the verdict.

HUNTER, HAMILTON, and WRIGHT, JJ., concur with ROSELLINI, J.

Petition for rehearing denied September 8, 1977.